## TEXAS STEEL COMPANY v. FORT WORTH & DENVER CITY RAILWAY CO. ET AL.

No. 5695. Decided June 10, 1931.
(40 S. W., 2d Series, 78.)

George W. Armstrong, for appellant.

Thompson & Barwise, Lee, Lomax & Wren, Goree, Odell & Allen and Fred L. Wallace, for appellees.

MR. COMMISSIONER CRITZ delivered the opinion of the court.

This suit was brought by Texas Steel Company, hereinafter designated the Steel Company, against the Fort Worth & Denver City Railway Company and the Missouri, Kansas & Texas Railway Company in the district court of Tarrant county, Texas, for overcharges and penalties. The certificate explains the suit. The pertinent part of the certificate reads as follows:

"Appellant alleges as its cause of action for overcharges and penalties for extortion that the Railroad Commission of Texas, on February 13, 1915, established—after notice and hearing to which appellant was a party—commodity rates for rolling mills, known as Commodity Tariff No. 48-A, and that said rates have never been cancelled in the manner provided by law and are still in force and effect; and that the appellees

have charged it rates grossly in excess of said rates in the shipment of said 112 cars, and it sues for the overcharges and the penalties provided in Art. 6475, Vernon's Ann. Stas.

"The appellees contend that these rates were lawfully cancelled by the Railroad Commission of Texas on April 26, 1922, by its Circular No. 5548, which rates were subsequently reduced approximately 10 per cent by order of the Railroad Commission of Texas of June 15, 1922, as shown by its Circular No. 5573, and that the rates thus established are the lawful rates.

"The circular of April 26, 1922, recites that:

" 'Whereas, it appearing to the Railroad Commission of Texas that in pursuance of orders dated July 7, 1916, * * * entered by the Interstate Commerce Commission in its docket No. 8418, Railroad Commission of Louisiana v. Aransas Harbor Ry. Co. et al., and associated cases, certain freight rates * * * as in said orders prescribed have been on and continuously since Nov. 1, 1916 * * * published and applied to the transportation of freight traffic between points within the State of Texas by railroad companies operating lines of railroad in this state, which said freight rates are carried in the following tariffs,' etc. (describing various tariffs); and 'Whereas, it further appearing to this Commission that said freight rates now published in the hereinbefore mentioned tariffs and classifications having been continuously since their publication and being now applied to such intrastate freight traffic and being recognized by this Commission as being so lawfully applied, the shipping interests and public welfare of this state require that they be adopted by this Commission.' The order therefore adopts the rates and is signed by two members of the Commission and attested by the Secretary.

"On May 4, 1922, the Interstate Commerce Commission entered an order in said cause No. 8518, stating among other things, that it 'further appearing that by order entered April 26, 1922, the Railroad Commission of Texas has adopted and prescribed for observance and application subsequent to May 15, 1922, between points within the State of Texas the intrastate rates heretofore entered by this Commission * * * (describing them), and it further appearing that said rates * * * will, if said order of this Commission be vacated, continue in effect as the lawfully established rates * * * it is ordered that said rates be vacated', etc.

"It appears from the 31st Annual Report of the Railroad Commission of Texas that these orders were made in pursuance of an agreement or an arrangement between the two said commissions and at the same time an arrangement was made for joint hearings of future applications involving inter and intra state rates.

"It is urged that there was no docketing of a cause, no notice to the railroads or to appellant, and no evidence introduced, nor any character of hearing had as a predicate for this Circular.

: "The rates adopted by the Railroad Commission of Texas in said Order No. 5548, were filed by A. C. Fonda as publishing agent of the railroads of Texas, with the Interstate Commerce Commission following the Shreveport decision and under the claim that said decision authorized the filing of such rates and the cancellation of corresponding intrastate rates in the State of Texas. The State contended that such rates were not in fact authorized by the Shreveport decision and that the same were without authority and void, and proceedings were pending in the courts to test the validity of said rates when the operation of the railroads was taken over by the Government pending the war, and such proceedings were suspended thereby.

"Federal control over the railroads was terminated by act of Congress on February 29, 1920, but the Interstate Commerce Commission continued to exercise jurisdiction over intrastate rates up to April 26, 1922, when the agreement or arrangement above mentioned was made, in pursuance of which the several law suits involving the validity of the Shreveport rates were dismissed.

"Question 1. Is the said Circular No. 5548 adopting said rates, void and subject to collateral attack for any of the following reasons, to-wit:

"(1) Because no notice was given to the railroads as provided by art. 6449 of the Statutes of 1925, prior to the issuance of said circular?

"(2) Because no notice was given to appellant, which appears to be the only rolling mill in Texas and the only one interested in the exception giving rolling mills preferential rates as provided in said Tariff No. 48-A adopted Feb. 13, 1915?

"(3) Because there appears to have been no evidence of the docketing of the cause, or hearing, or evidence, as provided by the rules of the Railroad Commission of Texas?

"(4) Because the Railroad Commission of Texas was without authority to make the said arrangement or agreement with the Interstate Commerce Commission?

"(5) Because the Fonda rates which were adopted were established unlawfully as claimed to have been held by the Court of Civil Appeals in the case of Abilene Southern Ry. Co. v. State, 199 S. W., 878; and the United States Supreme Court in the Minnesota Rate Cases, 230 U. S., 352, 33 S. Ct., 729, 57 L. Ed., 1511, and Wisconsin Ry. Com. v. C. B. & Q. Ry. Co., 257 U. S., 683, 42 S. Ct, 232, 66 L. Ed., 371, and other cases.

"Question 2: If the order of the Railroad Commission of Texas of February 13, 1915, has not been canceled by the orders mentioned, are the appellees liable for overcharges and the penalties provided by Art. 6475, for not observing the rates established in said order?

"Appellant sues for the penalties provided by statute for discrimination upon the ground that the fabrication in transit privilege granted to its

competitors constitutes an unjust discrimination against it, and that this privilege applies to traffic and points wholly intrasate, and is null and void. The appellees contend that this transit privilege was filed by the Southwestern lines with the Interstate Commerce Commission and that it thereby becomes an interstate regulation and that it is not subject to attack in the state courts.

"This transit privilege allows to dealers and fabricators who have paid freight upon inbound shipments from other states and have preserved their freight bills and otherwise complied with the regulations, the privilege of forwarding from their warehouses outbound shipments of the same character of article or articles of kindred character, for a period of twelve months, at a lower charge than is made at the same time for a corresponding distance upon like traffic, against the appellant. Paragraph of the said privilege provides as follows:

" 'The identity of struct*ual* iron and steel, also iron and steel articles converted into tank iron, unloaded in a warehouse, storeroom, etc., cannot be preserved * * *. Substitution of struct*ual* iron or steel, also iron and steel articles converted into tank iron, originating in one line, for a like commodity originating on other lines, will be permitted.'

"While the regulations require daily reports and cancellations of billing for steel used locally, in practice it is claimed no daily reports are made, but the reports are made quarterly; and no daily cancellation of billing is made for steel used locally, but such billing is used upon outbound shipments of other steel; and in practice billing for struct*ual* steel, such as beams, girders, and channels, is used for forwarding merchant steel bars and reinforcing concrete bars, and vice versa. It is urged that prior to the cancellation of common point territory and during a part of the time when the shipments in controversy were being made, the competitors of appellant were permitted to make shipments to any place in common point territory at a flat charge of two cents per 100 pounds, whereas appellant was required to pay for corresponding distances for the same traffic, mileage rates up to 48 cents per 100 pounds. It is urged that since the cancellation of common point territory one of appellant's competitors, the Colorado Iron & Fuel Co., and its customers, are still permitted to make such intrastate shipments at the flat two cent charge, and appellant's other competitors are still allowed to make shipments at very much less than appellant is required to pay at the same time for corresponding distances.

"It is urged that this transit privilege operates very greatly to the disadvantage of appellant in marketing its product and in meeting competition.

"Question 3: Is said transit privilege void and subject to collateral attack on either of the following grounds:

"(1) Because the traffic to which it is intended to be applied has lost

its interstate character and has become a 'part of the mass of state property', as held by the Supreme Court of Texas in the case of G. C. & S. F. Ry. Co. v. State, 97 Texas, 274, and 78 S. W., 495, and the Supreme Court of the United States in the cases of Atl. C. L. Ry. Co. v. Standard Oil Co., 275 U. S., 257, 48 S. Ct., 107, 72 L. Ed., 270; and A. T. & S. F. Ry. Co. v. United States, 279 U. S., 768, 49 S. Ct., 494, 73 L. Ed., 947.

"(2)   Because the Interstate Commerce Commission has no power to create discrimination and a regulation having that effect is void in view of section 2 of the National Transportation Act which provides, in substance, that a common carrier shall not 'directly or indirectly by any special rate, rebate, drawback, or other device, charge, collect * * * from any person greater or less compensation for any service rendered for the transportation of property than it charges and collects from any other person for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions'; and in view also of the decision of the Court of Civil Appeals of Texas in the case of Houston Chamber of Commerce v. Railroad Commission of Texas, 19 S. W. (2d) 583, holding that an order of the Railroad Commission of Texas is void where it has the effect of creating discrimination.

"Question 4:   Is the General Order of the Railroad Commission of Texas, issued as Circular No. 5573, dated June 15, 1922, wherein the rates complained of herein were adopted, void and subject to collateral attack in the District Court of Tarrant County, Texas?"

The several questions propounded by the Court of Civil Appeals to this court really involve the decision of two main contentions made by the Steel Company.

(a)   The Steel Company, in effect contends that the railroads have been charging for intrastate shipments of steel rates promulgated by the Texas Railroad Commission, but that the orders of the Railroad Commission by authority of which such rates and charges have been made are utterly void, and therefore subject to collateral attack in a court other than a district court of Travis county, Texas.

(b)   The Steel Company further contends that the Railroad Companies have discriminated against it as a shipper of iron and steel products, in that it gives its competitors located wholly outside the state a lower rate in the state of Texas than is given it.   The Steel Company bases such contention on the use by intrastate shippers of transit privileges set forth in a tariff of southwestern carriers on file with the Interstate Commerce Commission, and applicable to shipments moving wholly interstate.

The Steel Company attempts to recover damages and penalties under the provisions of article 6475, R. C. S. of Texas, 1925, for such alleged wrongful charges both for shipments moving wholly intrastate, and those

moving wholly interstate. We shall discuss the two contentions separately, first discussing the intrastate matter.

The Railroad Companies contend with reference to intrastate shipments, that under article 6448, R. C. S. of Texas, 1925, the Texas Railroad Commission is authorized to fix rates to be charged for the carriage of shipments of freight, including steel and iron, between two points in this state, that is for intrastate shipments, and that where such rates have been adopted and prescribed by the Texas Railroad Commission, in an order regular on its face, such order is not subject to collateral attack in the district court of Tarrant county, Texas. It is contended in this connection by the railroad companies that under the provisions of article 6452, R. C. S. of Texas, 1925, all rates prescribed by the Railroad Commission are deemed reasonable, fair and just, and are effective as between private parties and railroad companies until found otherwise in a direct attack brought in a district court of Travis county, Texas; it being undisputed that the rates here attacked by the Steel Company are those adopted and prescribed by the Railroad Commission. We sustain the contention of the Railroad Companies in this respect.

It is undisputed that on April 26th, 1922, the Texas Railroad Commission issued circular No. 5548 and designated as a "General Order". This order purports to prescribe and fix rates to be charged for shipments of steel and iron moving wholly intrastate in this state. Subsequently, on June 15th, 1922, a general order was made and issued by the Texas Railroad Commission reducing rates on all commodities involved in this suit a certain per cent.

The suit, in so far as it involves the above orders of the Texas Railroad Commission, is based upon the theory and contention that the above orders are absolutely and totally void for the several reasons set out in "Question No. 1" propounded in the certificate from the Court of Civil Appeals. We overrule these contentions.

It is the settled law of this state that the Railroad Commission is a quasi judicial body. Producers Refining Co. et al. v. M. K. & T. Ry. Co. of Texas (Tex. Com. App.), 13 S. W. (2d) 679.

Since the Railroad Commission is a quasi judicial body it follows that an order regular upon its face made by the commission is not subject to collateral attack. Article 6452-6453, R. C. S. of Texas, 1925; West Texas Compress Co. v. Railway Co. (Texas Com. App.), 15 S. W. (2d) 558; Producers Refining Co. v. M. K. & T. Ry. Co., 13 S. W. (2d) 679; Id., 680; Railroad Commission v. Weld, 95 Texas, 278, 66 S. W., 1095; M. K. & T. Ry. Co. of Texas v. Railroad Commission, 3 S. W. (2d) 489; Empire Gas & Fuel Co. v. E. L. Noble et al. Tex. Com. App.), 36 S. W. (2d) 451.

As shown by the certificate the Steel Company contends that the orders of the Railroad Commission are utterly void, because (a) made without

notice to the railroads, (b) because no notice was given to the Steel Company, (c) because there appears to have been no evidence heard by the Railroad Commission, and the case was not docketed, (d) because the order was made in pursuance to an agreement with the Interstate Commerce Commission, and, (e) because the rates were established unlawfully. All of these contentions are utterly untenable. The last (d), we presume embraces the others.

Under the plain and simple terms of article 6452 it is provided that all rates prescribed by the commission shall be conclusive as between private parties and railway companies, until found otherwise in a direct action. This article reads as follows:

"In all actions between private parties and railway companies brought under this law, the rates, charges, orders, rules, regulations and classifications prescribed by the Commission before the institution of such action, shall be held conclusive, and deemed and accepted to be reasonable, fair, and just, and in such respects shall not be controverted therein until finally found otherwise in a direct action brought for the purpose in the manner prescribed by the two succeeding articles."

Under the provision of article 6453 it is expressly provided that any party dissatisfied with any decision of the commission may attack the same by a direct proceeding or suit in Travis county, Texas, in which suit the Railroad Commission must be made a party. The statute in question reads as follows:

"If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the Commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decisions, act, rate, rule, charge, classification, or order, or to either or all of them, in a court of competent jurisdiction in Travis County, Texas, against said Commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature, and shall be tried and determined as other civil causes in said court. Either party to said action may appeal to the Appellate Court having jurisdiction of said cause; and said appeal shall be at once returnable to said Appellate Court at either of its terms; and said action so appealed shall have precedence in said Appellate Court of all causes of a different character therein pending; provided, that, if the court be in session at the time such right of action accrues, the suit may be filed during such term and stand ready for trial after ten days' notice. Provided further that no preliminary injunction shall be issued without notice to the opposite party and that no temporary restraining order shall be granted without notice to the opposite party unless it shall clearly appear from specific facts shown by affidavit or by the verified petition that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a

hearing had thereon. Every such temporary restraining order shall be enforced with the date and hour of issuance, shall be forthwith filed in the clerk's office and entered of record, shall define the injury and state why it is irreparably (irreparable) and why the order was granted without notice, and shall by its terms expire within such time after entry, not to exceed ten days, as the court or judge may fix, unless within the time so fixed the order is extended for a like period for good cause shown, and the reasons for such extension shall be entered of record. In case a temporary restraining order shall be granted without notice in the contingency specified, the matter of the issuance of a preliminary injunction shall be set down for a hearing at the earliest possible time and shall take precedence of all matters except to older matters of the same character; and when the same comes up for hearing the party obtaining the temporary restraining order shall proceed with the application for a preliminary injunction, and if he does not do so the court shall dissolve the temporary restraining order. Upon two days' notice to the party obtaining such temporary restraining order the opposite party may appear and move the dissolution or modification of the order, and in that event the court or judge shall proceed to hear and determine the motion as expeditiously as the ends of justice may require."

We take it that the statutes above quoted mean what they say. It is not contended that the orders of the Railroad Commission here collaterally attacked are void on their faces, or that the Railroad Commission was without inherent lawful jurisdiction to act in the premises. If such contentions were made they would be without merit.

The various statutes above mentioned have been in force for many years, and time and experience have demonstrated their wisdom. The statutes providing against collateral attacks on the judgments and orders of the commission were necessary in order that the commission might properly function. The rules and rates of the commission are matters of general public interest, as well as interest to shippers and carriers. In an order of the commission, lawful on its face, can be collaterally attacked in the various courts and counties of the state on grounds such as those urged in the instant case, interminable confusion would result, and railroad companies, though honestly endeavoring to obey the law, and the orders of the commission, could be mulcted in large sums in damages and penalties, and the orders and rates of the commission rendered hazardous to obey.

We think that a casual reading of the certificate will demonstrate that the orders of the commission here attacked as null and void are regular on their faces. All the grounds urged to nullify such orders require the court to go behind them to ascertain the facts, and do not appear on the face of such orders. It has long been settled in this state that such an attack is collateral.

If an order of the commission regular on its face can be collaterally

attacked on the ground of want of notice, or any other ground here urged, then the orders and rates of the commission could be rendered null and void in a proceeding in which the commission was never given an opportunity to be heard either on the facts or the law. Furthermore different courts might reach conflicting conclusions as to the facts involved in the same order. This demonstrates the wisdom of the statute, and the correctness of the rule here announced. The Legislature recognized in the beginning that to allow such attacks would lead to intolerable results, and foreclosed the right to do so by the statute prescribing the manner and the court in which the rules and rates of the commission can be subjected to judicial review. At this point we wish to state that we do not want to be understood as holding that we would hold these orders illegal in a direct proceeding. We do not pass on that matter as we have no such proceeding here. What we hold is that the orders here attacked are not subject to be called in question except in a direct proceeding brought in full conformity with the provisions of article 6453, supra.

With reference to the issues presented regarding alleged discriminations by the Railroad Companies growing out of the rates on file with the Interstate Commerce Commission, it is the settled law that such a suit cannot be maintained in a state court at all, and can only be maintained in a Federal court after the matter has been presented to the Interstate Commerce Commission. T. & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S., 426, 27 Sup. Ct. Rep., 350, 51 L. Ed., 553, 9 Ann. Cas, 1075.

What we have said settles the issues of this case, and demonstrates that this suit cannot be maintained at all in the district court of Tarrant county, Texas.

We recommend that the questions certified be answered as above indicated.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.