## GULF, C. & S. F. RY. CO. v. AMERICAN SUGAR REFINING CO.

No. 8876.

Court of Civil Appeals of Texas. Austin.

June 28, 1939.

Rehearing Denied July 19, 1939.

Terry, Cavin & Mills, G. B. Ross and V. W. McLeod, all of Galveston, for appellant.

Fulbright, Crooker & Freeman, C. A. Leddy, and J. H. Crooker, Jr., all of Houston, for appellee.

Joseph C. Hutcheson, III, and Harry R. Jones, both of Houston, for amici curiæ.

BLAIR, Justice.

This litigation arose as follows:

In April, 1927, the Railroad Commission issued its Circular No. 7193, prescribing freight rates for shipment of sugar and molasses in Texas. In March, 1928, the Commission issued its Circular .No. 7529, providing that shipments of sugar from Galveston, Sugar Land, and Texas City, to points distant 100 miles from Houston should observe as maximum the rates applicable from Houston to the same points. The rates prescribed in Circular No. 7529 were to become effective May 1, 1928. On April 30, 1928, appellant herein, Gulf, Colorado and Santa Fe Railway Company, and the Houston Chamber of Commerce, and others filed suits against the Railroad Commission in the District Court of Travis County as an appeal under Art. 6453, R. S.1925, to enjoin and annul the rates prescribed in Circular No. 7529, alleging that they were discriminatory and invalid. Appellee herein, American Sugar Refining Company, was not a party to the suit. On November 22, 1928, the District Court denied the relief prayed for, decreeing the rates prescribed in Circular No. 7529 to be valid. Appellant applied the rates prescribed in Circular No. 7193 . until December 8, 1928, on which date it put into effect the rates prescribed in Circular No. 7529, and on that date published and filed same with the Commission under protest,

which recited that said rates were being contested in the aforementioned suit, and declared that if the contested rates were held invalid, it intended to collect the undercharges due in the premises. On June 21, 1929, this court reversed the judgment of the District Court and rendered judgment cancelling, annulling, and perpetually enjoining Commission Circular No. 7529, upon the ground of discrimination. Houston Chamber of Commerce v. Railroad Commission of Texas, Tex.Civ.App., 19 S. W.2d 583. The Supreme Court affirmed the judgment of this court on January 23, 1935. 124 Tex. 375, 78 S.W.2d 591. On March 7, 1935, the Commission issued notice to the effect that because of these decisions the provisions of Circular No. 7529 were "void." Thereafter appellee sued appellant for $5,689.51 overcharges, being the agreed difference between the rates collected by appellant under Circular No. 7193 and the rates it would have collected under Circular No. 7529, if it had put same into effect from May 1, 1928, the effective date of same, and the date which the District Court finally disposed of the case, December 8, 1928. In a separate suit, appellant sued appellee for $1,499 undercharges, being the agreed difference between the rates appellant would have collected from appellee under Circular No. 7193 and the rates actually collected under Circular No. 7529, from December 8, 1928, to April 21, 1929. These suits were consolidated, and appellant's claim for undercharges became its cross-action against appellee in the consolidated suit, which was tried upon an agreed statement of facts. Judgment was rendered for appellee against appellant for $5,689.50 overcharges, and that appellant take nothing on its cross-action; hence this appeal.

The validity of appellee's judgment for $5,689.50 for overcharges turns upon the sole question of whether the rates prescribed in Circular No. 7529 were in force from the effective date recited therein, May 1, 1928, to December 8, 1928, and involves a construction of Art. 6452, which reads as follows: "In all actions between private parties and railway companies brought under this law, the rates, charges, orders, rules, regulations and classifications prescribed by the Commission before the institution of such actions shall be held conclusive, and deemed and accepted to be reasonable, fair, and just, and in such respects shall not be controverted therein until finally found otherwise in a direct action brought for the purpose in the manner prescribed by the two succeeding articles."

Appellee contends that this statute made conclusive the rates prescribed in Circular No. 7529 upon appellant until the date they were set aside by final judgment of the District Court of Travis County; and that until such judgment became final the rates prescribed in said Circular were the only legal rates which the railroad could lawfully charge and collect from appellee.

Appellant contends that the rates prescribed in Circular No. 7529 were not effective between said dates, because before they became effective they were attacked in the suit filed by it in the manner required by Art. 6453, and were found by this court in its judgment of June 21, 1929, to be invalid, which judgment was later affirmed by the Supreme Court; and that said rates were therefore invalid from their inception, entitling appellant to collect at all times the valid rates prescribed in Circular No. 7193, which were intended to be superseded by the invalid rates prescribed in Circular No. 7529. In consequence, appellant contends that the judgment in favor of appellee for alleged overcharges should be set aside; and that it should recover judgment on its cross-action against appellee for the undercharges due on the valid rates.

We have reached the conclusion that appellant's contentions should be sustained.

The manifest purpose of Art. 6452 is to prevent collateral attacks being made upon an order or rate of the Commission. It merely declares that the rates fixed by the Commission shall in all suits between the carrier and shipper be deemed conclusive and that same shall not be controverted, "until finally found otherwise in a direct action brought for the purpose." The statute does not provide that the rates fixed by the Commission shall be conclusive forever, but merely provides that they "shall not be controverted * * * until finally found otherwise in a direct action brought for the purpose," which language clearly evidences the intention of the legislature as not prohibiting actions between private parties and railway companies brought after the rates have been declared illegal in the statutory action instituted for that purpose. Such statutory appeal is prescribed by Art. 6453, with the burden of proof placed by Art. 6454 upon the complaining party. After a rate has been de-

clared illegal in such statutory proceeding, both the shipper and the railroad have the right to have applied the legal rate, and may recover for overcharges or undercharges as the facts may warrant, based upon the legal rate, which in the instant case is the rate prescribed in Circular No. 7193.

We construe Art. 6452 as being merely procedural and as not attempting to determine the substantive rights of shippers and railroads. It was so construed in the case of Texas Steel Co. v. Ft. Worth & D. C. Ry. Co., 120 Tex., 597, 40 S.W.2d 78, 82, wherein the court say: "If an order of the commission, lawful on its face, can be collaterally attacked in the various courts and counties of the state on grounds such as those urged in the instant case, interminable confusion would result, and railroad companies, though honestly endeavoring to obey the law and the orders of the commission could be mulcted in large sums in damages and penalties, and the orders and rates of the commission rendered hazardous to obey."

■ If Art. 6452 should be construed as contended for by appellee, a grave question as to its constitutionality is raised. It is essential, particularly where a rate is attacked as being confiscatory, that an appeal to the court from the order of the Commission fixing the attacked rate be allowed in order to meet the requirements of the due process clauses of both the State and the Federal Constitutions. Fourteenth Amendment U. S. Constitution, U.S.C.A. and Sec. 19 of Art. 1 of Tex. Constitution, Vernon's Ann.St. Article 6452 makes no attempt to except confiscatory rates from its operation. The appeal allowed by Art. 6453 would not afford full relief, if the railroads are bound by the rates which have been successfully attacked in the method prescribed by statute pending the time required for the court to determine their invalidity. Appellee's construction of the statute necessarily means that even though Circular No. 7529 was subsequently annulled by the court order, the railroad would nevertheless be liable to it for the difference between the amount collected under the legal rates prescribed in Circular No. 7193 and the illegal rates prescribed in Circular No. 7529. By the same reasoning, the railroad could be held liable for the statutory penalties, if it failed to apply the illegal rates pending the appeal and final judgment annulling the rates. This same interpretation was placed upon Art. 6452 by the Federal Circuit Court in the case of Mercantile Trust Co. v. Texas & P. Ry. Co., C.C., 51 F. 529, 542, and was declared to be unconstitutional under such interpretation. The court referring to this statute held as follows: "The act appears with studious, but with illogical ingenuity to endeavor to contrive a due process of law that would, while the due process was proceeding, permit the doing of the will of the commissioners, however arbitrary and unreasonable their rates might be, and might eventually be proved to be."

■ In the case of Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014, the Federal Supreme Court assumed for the purpose of its discussion that Art. 6452 was unconstitutional, but clearly intimated that if a proper construction be given the statute, it would not be so. We seek to give the statute that construction which will make it valid, by holding it to be a mere procedural statute, and that its purpose was to prevent confusion that would necessarily result if any and every court could pass judgment on the rates prescribed by the Commission, pending the statutory proceeding to determine its validity. This we do under the rule that courts must give a statute such construction as will validate it, if such construction is possible. 9 Tex.Jur., 483.

■■ Not having the right under Art. 6452 to require the application of the illegal rates prescribed in Circular No. 7529 pending the statutory proceeding in which they were declared invalid, appellee cannot recover. It brought its suit for the alleged overcharges under the provisions of Art. 6475, which authorize a shipper to sue a carrier for damages and penalties accruing out of alleged extortionate charges, but did not seek to recover the penalties therein authorized. Appellee's suit could not have been maintained during the pendency of the suit of the Houston Chamber of Commerce v. Railroad Commission, Tex. Civ.App., 19 S.W.2d 583; affirmed 124 Tex. 375, 78 S.W.2d 591, in which this court declared the rates prescribed by Circular No. 7529 invalid, because it would have been a collateral attack upon the validity of the rate order of the Commission, which can only be attacked in the manner provided by statute. Texas Steel Co. v. Ft. Worth & D. C. Ry., 120 Tex. 597, 40 S. W.2d 78. Since the rate order upon which appellee based its suit had been declared

to be invalid in the statutory proceeding instituted for that purpose prior to the time it brought its suit, it should not be permitted to recover damages based upon the illegal rate order. To hold otherwise would permit appellee to enforce for the period stated the illegal rate order prescribed in Circular No. 7529. Manifestly, to hold that either the shipper or carrier could be required to pay or collect an illegal rate pending the statutory proceeding in which the illegality of the rate is determined, would be unfair to both the shipper and the carrier; and the constitutionality of such a rule is seriously doubted. If such were the rule, then after the court declared a rate invalid the Commission could establish another invalid rate, and it could be enforced until declared invalid under the prescribed statutory procedure; and such could be done under appellee's construction of the statute. In the statutory proceeding prescribed by Art. 6453, the court is limited to the determination of the question as to whether the rate order is unreasonable and unjust or confiscatory upon the grounds alleged in the petition. When the court exercises this statutory jurisdiction and declares the rate order invalid, it necessarily determines that it is invalid from its inception, and the rate order must be regarded as if it never existed. We, therefore, hold that since the rates prescribed in Circular No. 7529 were invalid from their inception, the parties to this suit are relegated to their respective rights under the rates prescribed in Circular No. 7193, which were the legal rates, and which were attempted to be supplanted by the illegal Circular No. 7529.

The numerous cases cited by appellee do not sustain the validity of its judgment for overcharges based on the illegal rates prescribed in Circular No. 7529. It cites the case of Producers Refining Co. v. Missouri, K. & T. R. Co., Tex.Com.App., 13 S.W.2d 680, as expressly deciding the question here involved. Appellee also cites as particularly applicable: Woodrich v. Northern Pac. R. Co., 71 F.2d 732, 97 A. L.R. 401, and note p. 406, 420; Sunburst Oil & Refining Co. v. Great Northern R. Co., 91 Mont. 216, 7 P.2d 927; Montana Horse Products Co. v. Great Northern R. Co., 91 Mont. 194, 7 P.2d 919; El Paso & S. W. R. Co. v. Arizona Corporation Commission, D.C., 51 F.2d 573; Young Heading Co. v. Payne, 127 Miss. 48, 89 So. 782; Graham Ice Co. v. Chicago M. & St. P. R. Co., 153 Wis. 145, 140 N.W.

1097; Mathieson Alkali Works v. Norfolk & W. Ry. Co., 147 Va. 426, 137 S.E. 608; Northern Pacific Railway Co. v. Department of Public Works, 136 Wash. 389, 240 P. 362; Eagle Cotton Oil Co. v. Southern Ry. Co., 5 Cir., 51 F.2d 443; Miller Mill Co. v. Louisville & N. R. Co., 207 Ala. 253, 92 So. 797.

Among other cases cited by appellee as holding that neither a shipper nor a carrier may recover reparation where a commission-made rate is subsequently held by a court to be unnecessarily high, unreasonably low, or discriminatory are: Texas & P. R. R. v. Railroad Comm. of Louisiana, 137 La. 1059, 69 So. 837; St. Louis-San Francisco Co. v. State, 155 Okl. 236, 8 P.2d 744; State ex rel. Boynton v. Public Service Comm. of Kansas, 135 Kan. 491, 11 P.2d 999; Denver & Rio Grande R. Co. v. Public Utilities Comm. of Utah, 73 Utah 139, 272 P. 939; Atchison, T. & S. F. R. Co. v. Arizona Grocery Co., 9 Cir., 49 F.2d 563; Pitzer Transfer Corp. v. Norfolk & W. R. Co., D.C., 10 F.Supp. 436; Western Ry. of Alabama v. Montgomery County, 228 Ala. 426, 153 So. 622; and Murphy v. New York Central R., 170 App.Div. 788, 156 N.Y.S. 49.

We do not regard the above cited cases as authority for the question here presented. No Texas case exactly in point is cited, and we have found no such case. The cases cited by appellee fall within two general classifications or groups. The first group are cases where a commission has issued an order fixing certain rates, and seeks later to set aside its previous order and declare the rates previously fixed unreasonable or otherwise unlawful; and then to award damages upon shipments which moved under the rates. Such cases all hold that in rate-making a commission acts prospectively and cannot act retroactively; and the courts prohibit a commission from making any such order. This was the sole question determined in the Producers Refining Company case, supra.

The second group of cases are those in which the commission has fixed rates and a shipper has sued in court after making shipment under such rates, alleging that the same are unreasonable or otherwise unlawful, and seeking damages by reason thereof. In none of these cases had a direct attack been made upon the rate order, and they simply hold that such suits are in effect a collateral attack upon the

rates and cannot be maintained. Such suits are the kind of actions between private parties and railroads, which Art. 6452, supra, prohibits. No useful purpose can here be served by a review of these cases.

In the instant case, appellant railroad filed its suit attacking the rates prescribed in Circular No. ·7529 prior to its effective date, and prosecuted that suit to final judgment, wherein the rates were declared to be invalid. In doing so, the appellant followed the direction and language of the court in Producers' Refining Co. v. Missouri, K. & T. R. Co., Tex.Com.App., 13 S.W.2d 680, 682, wherein the court say: "Under this statute both the shipper and the railway company are protected against any rate that may be unjust, discriminatory, or confiscatory. When a given rate is promulgated by the Railroad Commission, if the railway company deems such rate confiscatory, it may refuse to apply the same and proceed upon proper proof to have the same annulled by judgment of the district court. If the shipper deems the rate unjust or discriminatory, he may by proper showing obtain similar relief by application to the district court."

Appellee further contends that since injunctive relief is provided for in Art. 6453, the legislature must have therefore intended by Art. 6452 to make the rates fixed by the Railroad Commission absolutely binding until the rates are finally invalidated by court. proceeding. We do not regard the injunctive provisions of this statute as being material to the question to be determined. In the first place, it was not intended to be a part of Art. 6452 because it was enacted long after Art. 6452 was enacted, but is made a part of Art. 6453. There was no necessity for placing the injunctive relief in Art. 6452, because it simply prohibited suits between carriers and shippers until' the rate order had been properly attacked under Art. 6453, and declared to be invalid. The purpose of Art. 6452 is well stated in the Texas Steel Company case, supra, and does not need to be reiterated here. The injunctive relief provided for is simply ancillary, and either party may avail of it in the statutory proceeding to determine the validity of the rates.

In the second place, there would be irreparable injury in every case if the illegal rates are binding upon railroads until the date of final judgment of the court declaring them to be invalid, because even the injunction would not be the final judgment under the construction placed upon Art. 6452 by appellee. The injunctive relief provided for is merely ancillary to the remedy given on the appeal under Art. 6453, and was not intended to give Art. 6452 the effect of fixing the substantive rights of the parties with respect to any rates attacked and held to be invalid in the statutory proceeding instituted for that purpose.

Having held that the rates ·prescribed in Circular No. 7193 are the legal rates, we hold that appellant is entitled to recover the undercharges due for the period it applied the illegal rates prescribed in Circular No. 7529 to appellee's shipments, which undercharges appellant sought to recover by its cross-action as aforementioned. The law is settled that a railroad must charge the rates prescribed by the Commission, and that it has the right to recover from a shipper undercharges where it has for some sufficient reason failed to apply or collect the full amount of the rates fixed or authorized by the Commission. Under facts and circumstances similar to the facts of this case, railroads have been held to be entitled to restitution, reparation or undercharges in the following cases: Baltimore & Ohio R. Co. v. United States, 279 U.S. 781, 49 S. Ct. 492, 73 L.Ed. 954; Denver & S. L. R. Co. v. Chicago, B. & Q. R. Co., 67 Colo. 155, 185 P. 817; California Adjustment Co. v. Atchison, T. & S. F. Ry. Co., 179 Cal. 140, 175 P. 682, 13 A.L.R. 274.

No equitable reason or ground exists why appellant should not recover the undercharges claimed by it. Neither appellee nor any shipper could have been misled for the period appellant applied the rates prescribed in Circular No. 7529. Prior to the effective date of such rates appellant and others sued to cancel and annul same in the manner required by the statutory law and refused to apply such rates until after the District Court declared them to be valid. Appellant then applied said rates until this court and the Supreme Court declared them invalid, which judgment was one in rem and binding upon all parties affected, whether or not they were parties to the suit. Railroad Commission of Texas v. Texas Steel Co., Tex.Civ.App., 27 S.W.2d 861; Lincoln Gas & Electric Light Co. v. City of Lincoln, 250 U.S. 256, 39 S.Ct. 454, 63 L.Ed. 968;. Arkadelphia Milling Co. v. St. Louis Southwestern R.

.Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517; 3 Amr.Jur., 742. When appellant published and put into effect said rates, it inserted therein a protest clause, which specifically stated that the rates were being contested in the aforementioned suit and declared that if such rates were held invalid, it intended to collect the legal rates. This placed all shippers affected by the rates on notice that the rates prescribed in Circular No. 7529 were being attacked, and there is no contention that appellee was misled in any manner in this respect.

In accordance with our conclusions, we reverse the judgment of the trial court awarding appellee $5,689.50 for overcharges, and render judgment that appellee take nothing by its suit. We reverse the judgment of the trial court denying appellant relief on its cross-action, and here render judgment for appellant in the sum of $1,499 for undercharges, with interest and costs of suit.

The judgment of the trial court is reversed and judgment is here rendered for appellant.

Reversed and rendered.