# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00803-CV

### All Saints Health System, et al., Appellants

### v.

### Texas Workers' Compensation Commission, et al., Appellees

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN201300, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

All Saints Health System and other hospitals ("the Hospitals")[1] appeal a declaratory judgment entered in favor of the Texas Workers' Compensation Commission ("the Commission") and several insurance companies and school districts ("the Insurers") regarding the substantive law to be applied to claims for additional reimbursement based on services which the Hospitals rendered to workers' compensation claimants under a 1992 hospital fee guideline, which this Court invalidated in 1995. *Texas Hosp. Ass'n v. Texas Workers' Comp. Comm'n*, 911 S.W.2d 884 (Tex. App.—Austin 1995, writ denied). In this appeal, we must determine what standards to apply to the Hospitals' additional reimbursement requests. The Hospitals would have us resurrect an expired temporary rule, which they argue was the last standard in place before the 1992 fee guideline's

---

[1] The complete list of parties can be found in the appendix to this opinion.

adoption. The Insurers argue that the Commission should base its reimbursement decisions primarily on the terms of the Hospitals' managed care contracts in existence during the reimbursement period. While we do not accept either party's position, we will affirm the trial court's declaratory judgment.

## BACKGROUND

The story of this epic legal dispute can be traced back to 1987, when the Legislature directed the Commission to establish and maintain "a guideline of fair and reasonable fees and charges" that health-care facilities might collect for their treatment of workers' compensation patients. Act of June 19, 1987, 70th Leg., R.S., ch. 1118, § 5, 1987 Tex. Gen. Laws 3825, 3832 (since repealed). In response, the Commission promulgated a rule setting compensation at a fixed percentage of each hospital's stated prices for each service. Until that time, health care providers had been entitled to "fair and reasonable compensation" for medical services rendered to injured workers. *See* Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 1, 1917 Tex. Gen. Laws 269, 273 (since repealed). Various hospitals challenged the fee guideline on the ground that it had been improperly adopted, and this Court vacated it for not meeting the applicable procedural requirements. *Methodist Hosps. v. Industrial Accident Bd.*, 798 S.W.2d 651, 659 (Tex. App.—Austin 1990, writ dism'd w.o.j.) (by omitting to restate rule's factual bases and reasons for disagreeing with comments, Commission failed to meet reasoned-justification requirement).

In response to the invalidation of this initial fee guideline, the Commission adopted an emergency rule extending an identical fee guideline until January 1, 1991. *See* 17 Tex. Reg. 2039, 3173 (1991). Then, on December 21, 1990, the Commission adopted Rule 134.400 on an emergency basis, effective January 1, 1991, and expiring on June 30, 1991. *See* 16 Tex. Reg. 78 (1991) (28 Tex.

2

Admin. Code § 134.400, since expired) ("the 1991 Emergency Fee Guideline"). Because the 1991 Emergency Fee Guideline continued to apply substantially the same substantive provisions, several hospitals again challenged the Commission's actions. This Court held that our order invalidating the Commission's initial fee guideline was the law of the case for any subsequent challenge to the readoption of the same substantive provisions. *Methodist Hosps. v. Texas Worker's Comp. Comm'n*, 874 S.W.2d 144, 147 (Tex. App.—Austin 1994, no writ). However, because both the extension and the emergency rule had already expired, this Court declared that any request for an injunction against the rules' enforcement was moot after the date of expiration. *See id.* ("Having expired, no rule exists for the trial court to enjoin the Commission from enforcing.").

Meanwhile, in 1989, the Texas Legislature completely rewrote the workers' compensation act, directing the Commission to set new reimbursement guidelines as part of a completely new benefits system. Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, 1989 Tex. Gen. Laws 1, 70-71, *amended by* Act of May 22, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1223;[2] *see* John Montford, Will Barber & Robert Duncan, *A Guide to Texas Workers' Comp Reform*, Introduction at 8 (1991). The overall statutory framework was intended to ensure quick distribution of benefits and decrease the need to litigate relatively small claims. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 513, 521 (Tex. 1995). The standard for establishing the new fee guidelines gave the Commission the "daunting task" of balancing all of the policy goals

---

[2] The Legislature codified the workers' compensation act into the Labor Code in 1993. Act of May 22, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987 (codified at Tex. Lab. Code Ann. §§ 401.001-417.004 (West 1996 & Supp. 2003)). Prior to the codification, the act had been located at Tex. Rev. Civ. Stat. Ann. arts 8306-8309i.

written into the new workers' compensation act. *See Patient Advocates v. Workers' Comp. Comm'n*, 80 S.W.3d 66, 72 (Tex. App.—Austin 2002, pet. granted).

The standard for establishing fee guidelines provides:

> Guidelines for medical services fees must be fair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control. The guidelines may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf. The [C]ommission shall consider the increased security of payment afforded by this subtitle in establishing these fee guidelines.

Tex. Lab. Code Ann. § 413.011(d) (West 1996);[3] *see* Act of Dec. 3, 1989, 71st Leg., 2d C.S., ch. 1, 1989 Tex. Gen. Laws 1, 70-72 (amended 1993) (codified as amended at Tex. Lab. Code Ann. § 413.011 (West 1996)). Thus, the statute gives the Commission the burden of designing a fee guideline that provides fair and reasonable reimbursements, ensures the quality of medical care, and simultaneously achieves effective medical cost control. *See Patient Advocates*, 80 S.W.3d at 72. Relying exclusively on the Commission's promulgated fee guidelines, the 1989 act does not specifically provide for reimbursement determinations to be made in individual cases without the use of an existing fee guideline.

Following the expiration of the 1991 Emergency Fee Guideline on June 30, the Commission no longer had a fee guideline under which to reimburse the Hospitals. The Commission promulgated a new rule providing that in the absence of a valid fee guideline the Commission would

---

[3] Because section 413.011(d) is essentially identical to section 413.011(b) as originally codified, we will refer to the current version for convenience.

provide for adequate reimbursement of medical and hospital services rendered under the workers' compensation program based on the statutory definition of "fair and reasonable." *See* 16 Tex. Reg. 5210 (1991), *amended in part by* 27 Tex. Reg. 4047 (2002) (codified at 28 Tex. Admin. Code § 134.1 (2003)).[4] Despite this rule, the Commission apparently continued to make fee-for-service reimbursements based on the 1991 Emergency Fee Guideline. Reimbursements were made in the absence of a controlling fee guideline for more than a year, until the Commission adopted a completely different type of fee guideline in 1992. *See* 17 Tex. Reg. 4949 (1992) ("the 1992 Fee Guideline"). While earlier guidelines had reimbursed the Hospitals at a fixed percentage of their billed fee-for-service, the 1992 Fee Guideline divided medical service into broad categories, such as surgical or intensive care, and assigned a fixed *per diem* reimbursement for any treatment in these categories at any hospital in the state. Also, by contrast to the earlier fee guidelines, the 1992 Fee Guideline did not take into account geographic differences in the cost and quality of medical services throughout the state. *See Texas Hosp. Ass'n v. Texas Workers' Comp. Comm'n*, 911 S.W.2d 884, 886 (Tex. App.—Austin 1995, writ denied). Several hospitals challenged the 1992 Fee Guideline on procedural and substantive grounds.[5] Because the Commission failed to justify adequately its adoption of a flat *per diem* reimbursement schedule, this Court invalidated the rule as failing to meet

---

[4] Except for the references to the uncodified statute, the cited sections of Rule 134.1 are not substantively different from those in the original Rule 134.1. For convenience, we will continue to reference the version contained in the current edition of the administrative code.

[5] The Hospitals sought, but did not obtain, an injunction preventing enforcement of the 1992 Fee Guideline pending the outcome of the declaratory judgment challenge.

5

the reasoned justification requirement.[6] *Id.* at 888; *see* Tex. Gov't Code Ann. § 2001.033(a) (West 2000) ("the APA"); *see also* Tex. Gov't Code Ann. § 2001.039 (West 2000) (1999 amendment confirms that court may invalidate rule for good cause, effective date of court's order). Additionally, this Court enjoined the Commission from enforcing the 1992 Fee Guideline. For almost two years, until our mandate finally issued, the Commission continued to reimburse the Hospitals on the basis of the 1992 Fee Guideline.

Effective August 1, 1997, the Commission adopted a second fee guideline based on a *per diem* compensation scheme almost identical to that of the 1992 Fee Guideline. *See* 22 Tex. Reg. 6264 (July 4, 1997) ("the 1997 Fee Guideline"). Some hospitals initially challenged the 1997 Fee Guideline, but later abandoned that suit. Thus, only payments made between the effective date of the 1992 Fee Guideline, September 1, 1992, and the effective date of the 1997 Fee Guideline, August 1, 1997, remained in contention. The Hospitals again sued the Commission, seeking a declaratory judgment that their claims should be reevaluated under a direct application of the statutory standards. *See Texas Hosp. Ass'n v. Brown*, No. 97-07492 (250th Dist. Co., Travis County, Tex. filed June 27, 1997). The parties settled this lawsuit by agreeing that any requests for additional compensation would be decided based upon the statutory criteria of labor code section 413.011. Based on this agreement, the Hospitals nonsuited their case and filed their claims with the Commission's Medical Review Division under the authority of section 413.011. By the end of 1998,

---

[6] The reasoned justification requirement under which the 1992 Fee Guideline was adopted has been amended. See Act of Jan. 18, 1999, 76th Leg., R.S., ch. 558, § 2, 1999 Tex. Gen. Laws 9, 3090 (current version at Tex. Gov't Code Ann. § 2001.033 (West 2000). The revised statute does not materially change reasoned justification analysis. *Reliant Energy v. Public Util. Comm'n*, 62 S.W.3d 833, 840 (Tex. App.—Austin 2001, no pet.).

the Hospitals had filed approximately 20,000 claims for additional payment seeking approximately $168 million.

The Medical Review Division is a Commission body empowered to monitor health care providers, insurance carriers, and workers' compensation claimants who receive medical services to ensure compliance with the Commission's medical policies and fee guidelines. Tex. Lab. Code Ann. § 413.002 (West 1996). The Medical Review Division evaluates claims based on evidence submitted by the hospital claiming additional reimbursement. *See* Tex. Admin. Code § 133.307(n) (2003). Under the parties' settlement agreement, the contested reimbursement claims were to be reviewed by the Medical Review Division. Beginning in 1998, the division began issuing decisions denying individual hospital-reimbursement claims. Each decision stated that the hospital in question had "failed to provide sufficient documentation in accordance with the criteria of Texas Labor Code [section] 413.011(b) [] to support a need for a change in the reimbursement." While some hospitals abandoned their claims at this point, others requested a *de novo* evidentiary hearing at the State Office of Administrative Hearings (SOAH) before an Administrative Law Judge (ALJ). The ALJ consolidated fifty-three of the Hospitals' additional reimbursement claims in an attempt to resolve the threshold legal issues, including determination of the legal standards that would properly govern the adequacy of reimbursement. In December 1999, the ALJ determined, among other things, that reimbursement would be governed by the statutory standards contained in section 413.011(d) of the Texas Labor Code. Based on these threshold rulings, the ALJ selected five test cases from the consolidated docket to be resolved individually.

7

While discovery issues were being litigated in the SOAH proceedings, the Hospitals filed this declaratory judgment action against the Commission and the Insurers in a Travis County district court, asking that the trial court hold the Commission in contempt and order that all hospitals be reimbursed at what the Hospitals claimed to be the standard in 1992—at between 85% and 100% of their billed charges.[7] The SOAH proceedings were accordingly abated. The trial court granted summary judgment in the Commission's and Insurers' favor, ruling that the reimbursement decisions would be governed by the statutory standards now laid out in Texas Labor Code section 413.011(d).[8]

**The Administrative Rules**

This case revolves around the statute and the Commission's application of its rules implementing both its medical service fee guidelines and the dispute-resolution process. The Commission rule governing "Use of the Fee Guidelines" provides that:

---

[7] The same proceedings were also to determine what limitations period would apply to the Hospitals' claims. These two questions were severed into two different causes, and this Court denied the Hospitals' request for writ of mandamus to reverse the trial court's severance ruling. *In re All Saints' Health Sys., et al.*, No. 03-02-00229CV (Tex. App.—Austin May 16, 2002) (orig. proceeding). This Court subsequently decided the limitations period issue in *Hospitals & Hospital Systems v. Continental Casualty Co.*, No. 03-02-00429-CV, 2003 Tex. App. LEXIS 4609 (Austin May 30, 2003, no pet. h.).

[8] In the section of their appellate brief headed "Prayer," the Hospitals apparently request a writ of mandamus. Mandamus will issue only when there is no other adequate remedy at law. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996). This appeal itself and the administrative process provided by the Commission constitute a remedy at law. *See Employees Ret. Sys. v. McDonald*, 551 S.W.2d 534, 536 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) (availability of administrative remedies precludes mandamus). This Court would have no jurisdiction to issue a mandamus under these facts.

(a) The ground rules and the medical service standards and limitations as established by the fee guidelines shall be used *to properly calculate the payments* due to the health care providers

. . . .

(c) Reimbursement for services not identified in an established fee guideline shall be reimbursed at *fair and reasonable rates as described in the Texas Workers' Compensation Act, § 413.011* until such period that specific fee guidelines are established by the commission.

28 Tex. Admin. Code § 134.1(a), (c) (emphasis added). Thus, Rule 134.1 provides, in effect, that all cost determinations regarding medical fee reimbursements, whether integrated into the fee guideline adoption process or determined on a case-by-case basis, will be decided according to section 413.011's definition of "fair and reasonable" compensation. Although all parties agree as an abstract principle that reimbursement must be made at "fair and reasonable" rates, they cannot agree on a definition for that criterion.

### *Contentions of the Parties*

The Hospitals argue that, because section 413.011 provides that reimbursement will only be made pursuant to a validly promulgated fee guideline, these reimbursement determinations can only be made under the last *valid* fee guideline in place before the adoption of the invalidated 1992 Fee Guideline. At the time the 1992 Fee Guideline was adopted, the Commission was issuing reimbursements based on the already expired 1991 Emergency Fee Guideline. The Hospitals argue that the result of our opinion invalidating the 1992 Fee Guideline is to reinstate the 1991 Emergency Fee Guideline as the governing standard for the reimbursement decisions at issue. In response, the Insurers contend that it is appropriate to evaluate each reimbursement claim separately under the fee

9

guideline statute as provided for by the Commission's rules. Additionally, the Insurers suggest that, under section 413.011(d)'s indication that reimbursement shall not exceed the fee charged for similar services to similar patients, the fees provided for in the Hospitals' managed care contracts, in effect, constitute a cap on the amount to be reimbursed.

## DISCUSSION

### *The Emergency Rule*

This Court has held that, under the old Railroad Commission Act, services rendered under an invalid rate will be recompensed at the validly enacted rate in place at the time the invalid rate was adopted. *Gulf, C. & S. F. Ry. Co. v. American Sugar Ref. Co.*, 130 S.W.2d 1030, 1034 (Tex. Civ. App.—Austin 1939, no writ); *see also In re Johnson*, 554 S.W.2d 775, 787 (Tex. App.—Corpus Christi 1977), *aff'd*, 569 S.W.2d 883 (Tex. 1978) (invalidated statute "leaves the question that it purports to settle just as it was prior to its ineffectual enactment"); *Genzer v. Fillip*, 134 S.W.2d 730, 733 (Tex. Civ. App.—Austin 1939, writ dism'd) (effect of invalidated statute). Based primarily on this authority, the Hospitals contend that our order invalidating the 1992 Fee Guideline automatically reinstated the reimbursement scheme in effect immediately before its adoption. At that time, the 1991 Emergency Fee Guideline had already expired by its terms. The Commission had continued, however, to reimburse at least some hospitals at the rates provided for in the 1991 Emergency Fee Guideline. Accordingly, the Hospitals conclude that they are entitled to reimbursement under the 1991 Emergency Fee Guideline because it was, for practical purposes, the applicable standard at the time of the 1992 Fee Guideline's adoption.

10

The Insurers respond that, between the expiration of the 1991 Emergency Fee Guideline and the adoption of the 1992 Fee Guideline, no valid Fee Guideline governed reimbursements. Consequently, according to the Insurers, because we must return to the situation as it existed at the time of the 1992 Fee Guideline's adoption, any reimbursement determinations must be made on a case-by-case basis pursuant to Rule 134.1 as it interprets section 413.011(d) of the labor code.

We agree that the appropriate remedy following the invalidation of an administrative rule under the APA is to return to the last validly adopted legal standard existing at the time of the rule's promulgation. As we reasoned in *Gulf Railway*, this rule is appropriate because it prevents agencies from retroactively imposing regulations not originally adopted in compliance with the APA's requirements. 130 S.W.2d at 1034. However, we also agree with the Insurers that, at the time the 1992 Fee Guideline was adopted, *no* validly enacted fee guideline was in place. The 1991 Emergency Fee Guideline had lapsed by its own terms. Emergency Rules may only be adopted for 120 days and renewed again for no longer than 60 days. Tex. Gov't Code Ann. § 2001.034(c) (West 2000). This rule prevents administrative agencies from using the less stringent requirements for adopting an emergency rule and then prolonging the application of that rule *ad infinitum. See id.* § 2001.034(b) (identical rule may be adopted through regular notice and comment procedures after emergency rule expires). As this Court held in *Methodist Hospitals*, from the time the 1991 Emergency Fee Guideline expired, there existed no fee guideline.[9] 874 S.W.2d at 147. However,

---

[9] No finding has been made that the 1991 Emergency Fee Guideline was uniformly applied during the period in question. The appellate record at most indicates that some hospitals received compensation at the rate provided for under the 1991 Emergency Fee Guideline when they applied

11

a legal standard for evaluating hospital reimbursements *did exist* at the time the 1992 fee guideline was adopted—Rule 134.1. Rule 134.1 calls for a case-by-case determination of "fair and reasonable" reimbursement for cases in which there is no controlling hospital fee guideline. Therefore, the result our 1995 decision was that each hospital reimbursement should be evaluated according to section 413.011(d)'s definition of "fair and reasonable" fee guidelines as implemented by Rule 134.1 for case-by-case determinations.

The Hospitals do not contest Rule 134.1's validity or applicability to these reimbursements. Rather, the Hospitals attempt to bolster their argument by arguing that, by denying all additional-reimbursement requests to this point, the Commission has engaged in "retroactive rulemaking." Agency rules and rates are set for the future, and not for the past. *Railroad Comm'n v. Lone Star Gas Co.*, 656 S.W.2d 421, 425 (Tex. 1983). We agree with the Hospitals that the law prohibits agencies from making "a retrospective inquiry to determine whether a prior rate was reasonable and imposing a surcharge when rates were too low or a refund when rates were too high."[10] *State v. Public Util. Comm'n*, 883 S.W.2d 190, 199 (Tex. 1994); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 207-08 (1980) (agency could not adopt completely new regulatory framework to dispose retroactively of medicare compensation claims). However, the Commission has not adopted a retroactive rule in this case; rather, the Medical Review Division has consistently determined that the Hospitals have not provided sufficient evidence that they are entitled

for reimbursement at those rates.

[10] Although this is not a ratemaking case in the traditional sense, the Workers' Compensation Commission's role in determining the fee guidelines is analogous to the rate-setting functions of the Railroad Commission and the Public Utility Commission.

to supplemental reimbursement. Once a record is developed at SOAH and challenged at the district court, such determinations may present a case for substantial evidence review. However, there is no indication on this record that those decisions constitute the retroactive adoption of the invalidated 1992 Fee Guideline. To date, none of the contested case proceedings regarding the division's decisions has been finalized. We cannot evaluate the merits of the Hospitals' claims until they have exhausted their administrative remedies by completing the SOAH proceedings and properly bringing an administrative appeal for judicial review. *See* 16 Tex. Admin. Code § 133.307(p)(3) (2003); *Railroad Comm'n v. WBD Oil & Gas*, 104 S.W.3d 69, 77-78 (Tex. 2003) (contested case proceedings serve different purpose from rulemaking and must be reviewed according to the applicable APA procedural provisions).

Because no formally adopted fee guideline existed at the time the 1992 Fee Guideline was enacted, we overrule the Hospitals' issue. We will now turn to the parameters of "fair and reasonable" reimbursement in dealing with the Insurers' contentions.

### The Managed Care Contracts

The trial court held that the provisions of section 413.011(d) would govern the reimbursement amounts at issue. In the abated SOAH proceedings, the ALJ has already found that managed care beneficiaries constitute an equivalent economic income group to workers' compensation recipients. Focusing on section 413.011(d)'s requirement that the fee for services not exceed "the fee charged for similar treatment of an injured individual of an equivalent standard of living," the Insurers suggest that the managed care contracts entered into by the Hospitals will, in effect, act as a cap on the amount of additional reimbursement available. *See* Tex. Lab. Code Ann.

13

§ 413.011(d). The Insurers contend that, because our decision invalidated the 1992 Fee Guideline on the basis of a procedural defect rather than a substantive challenge under the statute, no judicial parameters have yet been set on the reimbursement review proceedings. Further, because the reimbursements are to be determined on a case-by-case basis under the statutory guidelines, the Insurers conclude that only these managed care contracts, which provide similar services to those provided under the workers' compensation system, can establish the state of the market for similar services during the period in which the 1992 Fee Guideline was being applied to the Hospitals' claims. The Hospitals respond that the contracts are irrelevant to any case-by-case determination because they are based on a different cost model and economic incentives from workers' compensation reimbursements.

Because the managed care contracts entered into by the Hospitals reveal the amount paid by certain classes of individuals under certain economic circumstances for specific medical services, we cannot say that they are irrelevant. In light of section 413.011's provisions, such information will be important to the final reimbursement determinations. However, while we do not agree with the Hospitals that the managed care contracts are irrelevant, we reject the Insurers' argument that they are *per se* determinative. Workers' compensation reform was one of the most contentious issues ever addressed by the Texas Legislature, requiring most of a regular session and two special sessions. *See* Montford, Barber, & Duncan, Foreword at 1-2. The statute as revised burdens the Commission with the difficult task of assuring adequate quality care while controlling overall medical costs. *See Patient Advocates*, 80 S.W.3d at 72. The reimbursement fee guidelines, and by extension any reimbursement decision made in the absence of a validly enacted fee guideline,

14

must take all of the statutory requirements into account. Thus, to be "fair and reasonable" within the meaning of section 413.011(d), the Commission's reimbursement decisions must take into account *all* of the statutory factors, guaranteeing both cost control and quality of care. Section 413.011(d) does not specifically set managed care contracts as a cap on reimbursement. *See* Montford, Barber, & Duncan at 8A-14. Instead, it states generically that the fees shall not exceed those charged based on similar services rendered to similarly situated individuals. *See* Tex. Lab. Code Ann. § 413.011(d). Thus, any reimbursement decision made by the Commission under Rule 413.1 must take into account all of the statutory factors, keeping in mind that although the managed care contracts may be evidence of the amount that would otherwise have been charged, they do not as a matter of law set a ceiling on reimbursement.

The Insurers make much of the assertion that our earlier decision was "only procedural," because the Hospitals abandoned their "substantive" claims. Our opinion, however, explicitly states that the 1992 Fee Guideline was invalidated because it did not adequately describe the Commission's reasons for abandoning the former fee-for-service model and adopting the statewide *per diem* model. In commenting on the adoption order for the 1992 Fee Guideline, we stated that:

> The Commission has decided to reimburse very different medical services at the same rate because they fall into the same broad category. The Commission cannot justify such an action without providing, or more thoroughly describing, the data it used. A terse reference to "empirical billing" data is not enough to provide a factual basis for the rule. The brief comments offered by the Commission do not even begin to explain the data or reasoning that compel the conclusion that a few *per diem* rates can cover very different medical procedures in the many and diverse communities of Texas.

15

*Texas Hosp. Ass'n*, 911 S.W.2d at 888 (internal citations omitted). In short, our decision was predicated on our perception that the Commission had failed adequately to justify its decision to adopt the policy of applying a *per diem* fee guideline, as opposed to the fee-for-service guidelines used in the past. Thus, we invalidated not only the fee guideline, but also the *policy* of reimbursing claims on a *per diem* basis. Because our decision invalidated the *per diem* reimbursement model, we hold that the Commission must determine whether the Hospitals have received fair and reasonable reimbursement based on a fee-for-service model, as it would have done prior to the 1992 Fee Guideline's adoption. This is consistent with the purpose of the reasoned justification requirement, which serves to "provide meaningful public participation in the rulemaking procedure, to allow opponents of the rule to formulate specific challenges, and to ensure that the agency considers and analyzes a rule *before adopting it*." *National Ass'n of Indep. Insurers v. Dep't of Ins.*, 925 S.W.2d 667, 670 (Tex. 1996). For the same reasons that an improperly adopted agency rate cannot be enforced retroactively, when an agency makes a policy change, the reasoned justification requirement ensures that *no policy* will be enacted without adequate consideration. *See Motor Veh. Manufacturers Ass'n v. State Farm Mutual*, 463 U.S. 29, 42 (1983); *see also Gulf Ry.*, 130 S.W.2d at 1034. This does not mean that the policy can never be adopted, only that it will not be a valid policy until promulgated according to the APA's requirements. *National Ass'n of Indep. Ins.*, 925 S.W.2d at 670-71. Therefore, when a rule adopting a new policy is declared invalid, that policy cannot be applied until a new, properly adopted rule becomes effective. In this case, the Hospitals' "fair and reasonable" reimbursements must be predicated on a fee-for-service model rather than a *per diem* basis.

16

In their respective motions for summary judgment on the declaratory judgment action, the Hospitals asked the trial court to declare that the same reimbursement standards prior to the adoption of the 1992 Fee Guideline control, while the Insurers asked the trial court to declare that the statutory provisions of section 413.011(d) control. Because section 413.011(d) applied at the time the 1992 Fee Guideline was adopted, the trial court's determination fulfilled both requests. However, for purposes of determining "fair and reasonable" reimbursement, the requirements of section 413.011(d) must be interpreted in light of Commission policy as it existed at the time of the 1992 Fee Guideline: on a fee-for-service basis. Although the Hospitals' managed care contracts are relevant to the reimbursement determinations, they are not by themselves a cap on all reimbursement. To this point, the Hospitals' requests for additional reimbursement have been denied because there was insufficient evidence to suggest that the Hospitals were entitled to additional funds. As the SOAH proceedings continue, the Hospitals' right to reimbursement must be evaluated in light of the Commission's 1992 policies. We overrule the Hospitals' second issue.[11]

## CONCLUSION

When a rule is invalidated based on the APA's reasoned justification requirement, both its specific provisions and any concomitant policy changes revert to the standard in place at the time of the rule's adoption. In this case, the determination of "fair and reasonable" reimbursement must be made under the statutory requirements of section 413.011(d) as provided for in Rule 314.1

---

[11] The Insurers seek sanctions against the Hospitals' counsel, asserting that their appeal is "objectively frivolous," Tex. R. App. P. 45, and lacking in candor. Tex. Disciplinary R. Prof'l Conduct 3.03(a)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. app. A (West 1988). We will deny the request for sanctions.

17

in a manner appropriate to Commission policy in 1992.  This means that reimbursement must be calculated on a fee-for-service basis taking into account both cost-savings and quality of care, and that the Hospitals' managed care contracts, although relevant, do not *per se* constitute a cap on reimbursement.  The trial court's decision is affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   July 24, 2003

18