**BROWN & ROOT, Inc., v. TRADERS & GENERAL INS. CO.**

No. 10865.

Court of Civil Appeals of Texas. Galveston.

Nov. 16, 1939.

On Motions for Rehearing Dec. 14, 1939.
Rehearing Denied Jan. 11, 1940.

T. J. O'Brien and Edgar Monteith, both of Houston, for. appellant.

Sewell, Taylor, Morris & Connally, of Houston, for appellee.

CODY, Justice.

The main action was brought by appellee, a compensation insurance carrier, to collect from appellant the sum of $1,-585.01, alleged to be due as premiums on workmen's compensation insurance policies, covering the period from January 1, 1935, to April 11, 1935. As there is no question but that the policies sued on by

appellee were by it issued to appellant, and by the appellant duly accepted, and remained in force for the time specified, and as no question is made as to the amount of the premiums sued for, no further discussion of the main action is necessary. The question here involved, as indicated, grew out of appellant's cross-action.

Appellant alleged in its cross-action that during the period from May 2, 1933, to May 2, 1935, it was insured by two policies of workmen's compensation insurance issued by appellee, being WC–1529 and WC–2332. That in November, 1934, it discovered that the death of one Robert Dewey had been erroneously charged against its experience record, and on November 22, 1934, the Insurance Casualty Commissioner, upon proof of that fact, eliminated such loss from appellant's experience record. By reason of such elimination the Insurance Casualty Company, by proper endorsement, reduced the rate from a debit of 34.2% to a debit of 27.8% on appellant's compensation insurance, which modification was made retroactive to May 2, 1934, the normal anniversary-rate date of appellant on the records of said Commissioner. That although appellant demanded of said Commissioner, and of appellee, that such rate modification be made retroactive to May 2, 1933, such demand was refused. The ground of the refusal of said Commissioner to make the rate modification retroactive beyond May 2, 1934, and back to May 2, 1933, was a custom and practice of the Board of Insurance Commissioners and the Casualty Insurance Commissioner not to make rate-modifications retroactive beyond the insured's next preceding anniversary-rate date. That the application of the rate credit of 6.4% retroactively from May 2, 1934, to May 2, 1933, would amount to an additional rebate to appellant of $1,751.80 (and to which appellant was as much entitled as it was to the rebate on the period back to May 2, 1934), and the failure of appellee to make such rebate to appellant of such over-payment of $1,751.80, damaged appellant in such sum, the true amount lawfully due on a premium on said policy of insurance then in effect being $1,751.80 less than appellee actually collected. Appellant further pleaded that the over-payment was made by it because of the erroneous premium-rate fixed by the Board of Insurance Commissioners and the Casualty Insurance Commissioner, and this error was due to the mutual mistake of appellant, appellee, and said Insurance Commissioners, in including the Dewey death claim in appellant's experience record. Appellant pled it had a right to have the policies of insurance reformed to call for such premium as was lawfully due thereon after the elimination of the Dewey death-claim from appellant's experience record, effective back to May 2, 1933. Appellant alleged that the Insurance Commission declined to make the rate modification retroactive from May 2, 1934, to May 2, 1933, only because of the theory that said Commission had no power or jurisdiction to do so. This plea for reformation was made alternatively to a plea in a court whereby appellant sought to recover the said sum of $1,751.80 as money had and received. Appellant also set up the sum of $1,751.80 as a set-off and a counter-claim to any recovery had by appellee in the main suit.

Appellee answered appellant's cross-action, aside from demurrers, exceptions, and general denial, by pleading the 2 and 4 years statutes of limitation, and by the special plea that the Dewey loss, charged against appellant's experience record was reported to the Board of Commissioners and the Casualty Insurance Commissioner by the Lumberman's Reciprocal Association, the insurer carrying appellant's insurance at the time of the Dewey loss; that this occurred long prior to the issuance of a policy by appellee to appellant, and that if appellant did not actually know such loss had been charged to its experience record, it had constructive notice thereof, the same being a part of the public records of the Board of Insurance Commissioners and the Casualty Insurance Commissioner, and was guilty of negligence in failing to know its experience record, and is thus not entitled to equitable relief of reformation of contract. Appellee also pled estoppel; and denied any mutual mistake, but alleged that if any mistake occurred it was a mistake of the Casualty Insurance Commissioner, relating to a collateral matter occurring prior to the issuance of any policy by appellee. Appellee pled that its policies were issued in reliance upon the premium experience rating established by the Casualty Insurance Commissioner and the Board of Insurance Commissioners as applicable to appellant, etc.

At the conclusion of the evidence both parties moved for a peremptory instruction. Appellee's motion was granted, and judgment was rendered for it in the main action for the sum sued for with interest thereon at the legal rate from April 11, 1935, and appellant was denied any recovery on its cross-action.

There seems to be no dispute about the facts between the parties. Appellee issued to appellant workmen's compensation policy No. 1529, which covered the period from February 11, 1933, to February 11, 1934; and also the workmen's compensation policy No. 2332, which covered the period from February 11, 1934, to February 11, 1935. Appellant paid the premiums on the policies in accordance with the existing rate promulgated by the Insurance Department, from February 11, 1933, to February 11, 1934. By the term Insurance Department we mean the Board of Insurance Commissioners and Casualty Insurance Commissioner.

The death of Robert Dewey occurred in 1929, at a time when some other insurance carrier carried appellant's compensation insurance, and his death was charged against appellant's experience record by such insurance carrier. Appellant had no actual knowledge that such loss had been thus erroneously included in its experience record until November, 1934. The records of the Insurance Department are public, and doubtless the holder of a compensation insurance policy is charged with knowledge of his experience record.

Under statutory authority (Arts. 4907–4916, Vernon's Ann.Civ.St. arts. 4907–4916), the Insurance Department promulgates the rates on which the premiums applying to workmen's compensation insurance are based, using, so the evidence indicates, these factors:

1. Workmen's Compensation rates of premium are based on statistical data comprising pay rolls and losses filed by insurance companies over a five-year period.

2. The manual or base rate is the rate which is determined from the premiums and the losses for a given classification of all of the risks in that class by the Insurance Department. In the contractors' classification, to which appellant belongs, the rate is based upon the losses and premiums of all contractors that have been reported to the Insurance Department during the rating period. Now the manual rating applies to all contractors who are not eligible for experience rating. Eligibility for experience rating is determined by the volume of premiums per year.

3. The experience rate is the variation of, or the plan for varying, the manual rates based on the experience of the individual risk. If the individual contractor's losses are lower than the general experience, then his experience rate is lower than the manual rate, if higher, then his modification would raise rate above the manual rate. The experience rate is calculated on the basis of the premiums paid by the risk for the past five years, excluding the first year. The calculation of the experience is based on the premiums paid during the five years apportioned to the losses over the same period.

4. It is customary for the Department to accept statements of the individual's risk's experience certified to by a responsible officer over a four-year period. The insurance carrier furnishes the pay roll and loss data, including a history of claims upon which premium rates of individual risks are determined.

5. The Department requests re-reporting of the experience of each individual risk each year, and the data in these reports are assumed to be correct in the light of all information available at the time the rate is published.

6. Normal anniversary-rate date is the date on which rates are made effective for the particular insurance under consideration. Rates are promulgated for one year and remain in force one year from the normal anniversary-rate date. Such date does not necessarily coincide with the effective date of the policy in force.

Appellant's anniversary-rate date was May 2, and the rate promulgated by the Department affecting the policies which are the subject matter of appellant's cross-action covered the period of May 2, 1933, to May 2, 1934, on one, and the period of May 2, 1934, to May 2, 1935, on the other, though the effective date in each instance was February 11th, preceding the anniversary date.

7. Workmen's Compensation premium-rate modifications are never made retroactive by the Department beyond the next preceding normal anniversary-rate date of the risk.

8. The Texas endorsement attached to the Workmen's Compensation policy carries the provision that classification and rates of insurance are subject to modification in accordance with the Manual and Experience or Schedule Rating Plans. Rate Modifications are made retroactive by the Department when experience or schedule data has not been filed prior to the normal anniversary-rate date; and if error is discovered in statistical data within the 12-month period.

9. The refusal of the Department to make a premium rate or modification retroactive beyond the normal anniversary date is based on custom and practice. The Department construes its rate-making powers to be legislative and prospective, and rules that it has no power to modify an expired rate on an "expired contract". By "expired contract" is meant those policy contracts, endorsements and rates promulgated, that have been completed and executed prior to the anniversary rate date of the policy then in force—that is, the Department promulgates rate modifications and makes the same applicable only to the current policy in force, meaning the policy in force between the normal anniversary rate dates at the time when such rate modifications are put into effect.

10. The inclusion of the Dewey death claim in the experience record of appellant, filed with the Department, increased the premium rate of appellant.

Appellant's main contention here is that the Insurance Department has construed its rate-making power as being capable of being exercised prospectively only, and incapable of being exercised retroactively, so that, consequently, in making the correction or modification of the rate, November 22, 1934, effective as of the next preceding normal anniversary date, May 2, 1934, the Insurance Department had exhausted its jurisdiction to award appellant reparations against appellee; and that appellant is therefore without any adequate remedy at law for full and complete relief. The various remedies which appellant principally urges that it was entitled to, and was deprived of below, relate to the right of a litigant to invoke the aid of a court of equity when without any adequate remedy at law.

A carrier of workmen's compensation insurance and its policy-holder necessarily contract with each other that the premium rate shall be the duly and lawfully prescribed rate for the risk involved, and none other. They are without power by contract, or otherwise, to alter such prescribed rate. So, if the parties may not consciously and intentionally change the lawfully prescribed rate, their knowledge, ignorance, or negligence is equally incompetent to work any such change. Therefore, the collection by the insurer of a higher or lower rate than that which is duly and lawfully prescribed for the risk involved constitutes a breach of the insurance contract for such insurer to collect only the duly prescribed rate. And, of course, a suit for reparation for overcharges or undercharges is simply and purely a legal action, with no question of reformation of contract, or other equity involved in it. In other words, if a carrier of workmen's compensation, for instance, had collected a lower premium rate than was lawfully prescribed for carrying the risk involved, and later discovered such error, it would certainly not have to prove that it was not negligent in collecting the unlawful rate, in order to entitle it to collect the only rate which the law authorized or permitted it to collect; neither would it be necessary for such insurer to have the policy of insurance reformed to specify such lawful rate, for the contract by force of law intends that the premium rate, and only the premium rate, which applies to carrying the risk involved is agreed rate. Premium rates are prescribed with the view of being "adequate to the risks to which they apply and consistent with the maintenance of solvency and the creation of adequate reserves and a reasonable surplus". Art. 4911. And, of course, the same sanction of law which requires that an insurer collect the lawful rate, excludes the lawfulness of overcharging equally with undercharging. The controlling question in this case, therefore, is whether the premium rate collected by appellee covering the period from May 2, 1933, to May 2, 1934, was greater than the rate prescribed by the system of schedule and experience rating of the Department as applied to actual facts which made up appellant's true experience record.

As disclosed by the record in this case, the Department determined that the Dewey death loss was erroneously included in appellant's experience record, and determined that the inclusion of such loss to

that extent falsified appellant's experience record; and so, eliminated it. And on November 22, 1934, ordered the premium rate that was applied to the policies modified, and required appellee to refund the excess premium which it had collected covering the period from November 22, 1934, to the preceding May 2. In making such modification order, the Department could not have considered that it was promulgating a new rate, or a change in rate, for it did not publish notice thereof for 15 days before the effective date of such modification. Art. 4907. Indeed, as indicated, the Department consciously and intentionally made such correction effective retroactively to the preceding May 2. And the record here affirmatively discloses that the Department disclaims not merely the intention but the power to exercise its rate-making powers retroactively. As recognized by the Department, it is beyond the power of a rate-making body to issue an order fixing a certain rate, and then later set such order aside and declare it to have been unreasonable or otherwise unlawful, and then award reparation for the period such previous order had been in effect. Gulf C. & S. F. R. Co. v. American Sugar Refining Co., Tex. Civ.App., 130 S.W.2d 1030, 1034, writ refused.

The fact, that in making such modification order, and in requiring appellee to make reparation to appellant for overcharges collected back to May 2, 1934, the Department did not consider that it was exercising its rate-making powers, would not, in any case, be binding on the court as to the nature of the power which was exercised in making the modification. But the construction which the Department puts on the nature of powers which have been granted to it, or of the powers which it has exercised on occasion, is entitled to be considered by the court, when subsequently reviewing an exercise by the Department of its powers.

It is clear, we believe, that the exercise of its rate-making powers by the Department in so far as the true rate, lawfully applying to the carrying of appellant's risk, occurred when the "system of schedule and experience rating" (which determined the rate to be applied to the peculiar hazard of appellant's risk) was adopted. Art. 4911. The correction or modification in rate was the result of an exercise of the Department's fact-finding powers. A policy-holder's classification, or the premium rate applying to his risk, is subject to change to conform to any factual change which would determine that he belonged to a different class, or which would determine that the hazard of his risk was actually greater than indicated by either an erroneous or a superannuated experience record. Clearly, no action changing rates, which is made necessary to conform to a change in the policy-holder's class or experience record, would constitute the making of new rates. For any such change has been brought about by the policy-holder in changing his class or changing his experience record to a class or record to which other rates are attached. Here we are not concerned with a change made in a premium rate to conform to a corresponding change in the policy-holder's classification or experience record, but are concerned with an instance where the Commission has determined that an error occurred in compiling the data of a policy-holder's experience record which resulted in the application of an overcharge. The inclusion of the erroneous data in appellant's experience record had automatically operated, under the Department's "system of schedule and experience rating", to raise appellant's premium rate to 6.4 above what the data in appellant's true experience record prescribed.

There is nothing very unusual about errors being made in the application of rates, where rates are prescribed by law. The instance most familiar to all is that of freight rates. The occasion for most suits to recover reparation for overcharges or undercharges on shipments of freight, is the claim that some one wrongfully classified the commodity which was the subject-matter of the shipment, and that there was, as a consequence, the wrong rate applied and collected. If the claimant in such a suit succeeds in proving that the commodity shipped was wrongfully classified, and succeeds in proving that it belonged to a classification carrying a lower rate, he will, of course, recover reparation for overcharges. There are, of course, inherent differences in the modus operandi of carriers of freight and carriers of insurance with respect to the determination of the rate lawfully applying to their respective services. A rate clerk of a freight carrier determines from inspection, or from a way bill, the com-

modity and its class; he determines from the tariffs then in force what rates the commodity and the classification calls for. If he was mistaken in his classification of the commodity, the corresponding mistake was made in the rate which was applied. But it would occur to no one at this late date to justify the collection of an illegal rate just because the mistake wasn't sooner discovered, or was innocently made. From the evidence before us it would appear that a correct determination of the classification of a policy-holder and a true report of the data making up his experience record would make it a mere clerical function to determine the lawful premium rate to be charged. Neither the policy-holder nor the insurance carrier can claim any vested right in an error in the policy-holder's experience record, or classification, and thus defeat the law prescribing the correct rate to be applied thereto. Under the facts here disclosed appellee has simply collected an excessive premium rate on the period from May 2, 1933, to May 2, 1934. Since it does business under the rates prescribed by the Department, it would be no hardship on appellee to be required to carry the risk at the lawful rate to say the least.

Now, while the finding of the Commissioner, to the effect that appellee was collecting a premium rate from appellant in excess of what appellant's true experience record indicated, is conclusive and binding in the state of the record before us, this cannot be taken to mean that the Commissioner had authority to limit the effect that such determination should have on the rights of the parties. Nor did he assume any such authority. It is evident to us that the Department considers it essential to the proper discharge of its duties to treat a policy of insurance as being currently before it for the exercise of its regulatory powers over the parties to it during the period between the policy-holder's anniversary-rate dates. Having corrected the rate, it seems entirely proper to us that the Department, in so far as, and for the period that the parties were subject to its regulatory powers, should make effective such correction. It would have amounted to a usurpation of power on its part had the Department undertaken to have itself enforced such correction beyond the scope of the operation of its regulatory powers—i. e., beyond the current period embraced between the policy-

holder's anniversary dates. As regards the enforcement of the right of the policy-holder to recover the overcharges on the "expired contract" portion of the policy, there was neither occasion nor excuse for the Department to undertake to award reparation.

From the record in this case it is clear that appellee collected $1,751.80 in excess of the lawful rate for the period between May 2, 1933, to May 2, 1934. The cross-action was instituted October 10, 1936. For the same reason that a suit for reparation on a railroad overcharge or undercharge is not barred for four years next preceding the filing of the suit therefor, a suit for overcharges on premiums on an insurance policy is not barred for any time during the period of four years next preceding the filing of a suit therefor. No overcharges made to appellee from appellant subsequent to October 10, 1932, are barred by the statute of limitations.

While it does not readily occur to us that any basis to resist recovery of the reparation for the overcharges sued for by appellant can be shown to exist, it does seem clear that the court below tried the case on the wrong theory, on the theory that in order for appellant to recover it must be shown that it was entitled to reformation of contract or some other equitable relief. As the case was tried on the wrong theory, and under that theory the court rendered judgment for appellee, we believe that in reversing the judgment we should, under the authority of Waldo v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 50 S.W.2d 274, 276, remand the cause for a new trial, and not here render judgment for appellant. The trial court will render judgment on the main action as heretofore, re-trying only the cross-action, and if appellant recovers judgment the amount will be set off against the judgment awarded in the main action.

Reversed and remanded.

## On Motions for Rehearing.

 Appellee has, it seems to us, confused the rate-making function of the Insurance Department—which function is legislative in character and cannot therefore be exercised retroactively in violation of the constitutional prohibition against making ex post facto and retroactive laws —with its administrative function of rate-application, on which the prohibition

against making retroactive laws has no bearing. We will first of all show that the correction made by the Department on November 22, 1934, referred to in our original opinion, was an exercise of the Department's administrative function, and that the prohibition against retroactive legislation cannot possibly constitute a legal obstacle to the correction of the application of an erroneous rate, or to the right of reparation for the time the erroneous rate was applied.

As is well known, rate-making is law making. And, as is true of all other legislation, after orders which prescribe rates for particular services have gone into effect, such rates must be applied or assessed for the performance of services for which they have been previously prescribed. As pointed out in our original opinion, errors will inevitably occur at times whereby the agency, which is charged with the duty of administering or applying rates which have been previously prescribed for particular services, will assess for the performance of a particular service a rate prescribed for a different service. In the case of railroad rates, which are prescribed by one agency, and are applied by another —the individual carriers themselves—there is small danger (after it has been established as a fact that the rate which had been previously prescribed for a particular service was not assessed for the performance of such service, but that a different rate was assessed therefor), of confusing the action of the commission in prescribing the rate (which is legislative) with the error of the carrier in assessing and collecting an erroneous rate (which is administrative). Furthermore, it is practically impossible to think, or to argue, that a carrier, which is by law denied all rate-making power, may, by assessing and collecting an erroneous rate, thereby establish a rate, which it has erroneously assessed and collected, as the only lawful rate for such service, so as thereby to enable the carrier or shipper to claim that any correction in application would constitute retroactive legislation. An argument which is so patently absurd when used of an error in applying a railroad rate prescribed for one service to another and different service, loses something of its absurdity, though it can gain nothing in validity, when used of an error made by the Insurance Department in applying a rate previously prescribed for a greater risk

than the risk which was actually involved, because the Department has by law both the power to prescribe rates, and to apply them after they have been prescribed to the risk for which they were prescribed.

The action taken by the Insurance Department on November 22, 1934, by which a change was made in the rate which was applied to appellant's particular risk, was not the exercise of the Department's legislative or rate-making functions. No change was thereby made in the Department's rate structure. But, to the contrary, it affirmatively appears from the record in this case, that the Department applied on November 22, 1934, the same identical rate which it would have applied as early as the very inception of appellant's policies of insurance had the fact been made known to it at that time that the Dewey death loss had been erroneously included in appellant's experience record. In other words, it is not pretended that the rate which was applied on November 22, 1934, was then established, or that it had not been in full force and effect at all times from the very inception of appellant's policies, and available to be applied by the Department, and would have been applied by the Department then but for the fact that the Department did not then know said rate should be applied because appellant's experience record erroneously included the Dewey death loss. Indeed, appellee, on original hearing, made the point that the only reason why the rate, which was applied by way of correction on November 22, 1934, was not applied even as early as the inception of the policies, was due to the negligence of appellant in failing to discover the Dewey death loss. The action taken by the Department on November 22, 1934, was obviously an exercise of its administrative function of rate-application, and not the exercise of its legislative function of rate-making. And the constitutional prohibition against retroactive legislation does not operate to prevent the Department from applying the correct rate, and does not operate to prevent appellant from recovering reparation for premiums which appellee collected in excess of the rate which appellee earned and the Department would have assessed, except for said error in appellant's experience record. It is clear that in the instant case, the rate which the Department determined on November 22, 1934, was correct, was one that could and would have

been applied at the inception of the policies but for the erroneous inclusion of the Dewey death-loss. And that is to say it was the rate prescribed by law—even prior to the inception of the policies for the service of carrying appellant's risk; and it was because it was in full force and effect that it was applied by way of correction on November 22, 1934.

 It is no doubt true, as it insists, that, had appellee sued appellant for the portions of premiums which had, according to the face of the policies accrued between May 2, 1933, and May 2, 1934, and obtained judgment therefor before the correction was made, appellee would have recovered judgment from appellant for the amount then indicated by the face of the policies. That is, appellant would have recovered on the basis of the erroneous rate. Such a recovery would have been final. But such a recovery would have resulted, not because the amount so recovered was actually due by law, but because the proof which would then have been made would have erroneously established such amount as based on the duly prescribed rate. Judgments are sometimes recovered on evidence which at a later day could be proven erroneous, yet the judgments so obtained finally conclude the matters in litigation. But that such a judgment as indicated would have resulted, if taken before the error in rate had been corrected, is to be attributed solely to the doctrine of finality of judgments, which is based on the same policy as is, of course, the statute of limitation.

 Appellee further urges that it works a hardship and great inconvenience on insurance companies to require them, long after they had collected premium money, but within the period of the four year statute of limitation (Vernon's Ann. Civ.St. art. 5527), to make reparation, merely because the Insurance Department might at such late date uncover errors. The purpose of prescribing by law the rates that shall be charged is a most excellent one. No error made in administering the law can repeal it, or knowingly be permitted to defeat it; certainly the convenience of those whose business the law is meant to regulate, cannot serve to defeat it. It is doubtless true that some of the errors which the Insurance Department corrects from time to time, as in the present case, in misapplications of rates, are errors which the Insurance Company

concerned could not have discovered itself. But it is difficult to understand how the substitution by the Department of the correct rate for an erroneous rate could have serious consequences to an insurance company. The error made by the Department in applying a rate can no more give an insurance company the right to a wrong rate, than can an error made by a carrier in applying a rate give a shipper the right to a wrong rate. And in legal contemplation the company can suffer no harm by being required to carry the actual risk involved at the rate previously prescribed therefor. Moreover, the rule works both ways. While it may be that the greater vigilance of insurance companies in such matters, and the greater expert knowledge possessed by them, keep down errors made against them and in favor of policy holders; yet such errors are inevitable, and then the rule will work for them.

Appellee further argues that, where the Insurance Department is permitted to make correction such as it made in the present instance, and if policy-holders are permitted to recover reparation on the basis of such corrections, that insurance rates will be wholly unstable; and insurance companies will have no certain rates to count on. It is but fair to appellee to state again in this connection that it fails to distinguish between the exercise of the rate-making function by the Department, and its rate-application function in the exercise of which it applies to particular risks rates theretofore prescribed for carrying the particular risk involved. Possessed of such a view, it is entirely logical for appellee to consider that the Department, when it establishes a new manual or base rate, is but exercising the same function which it exercises when it applies a previously prescribed "adjusted" rate. It is, of course, in reference to previously prescribed manual rates that "adjusted" rates can be spoken of as existing, for they are nothing more than variations calculated on the applicable manual rate, according to the provisions of "System of Schedule and Experience Rating" adopted by the Department (and that is certain which by mere calculation can be made certain). So much we infer from the record before us in this case. Of course the establishment of a new manual rate, from which variations to be applied to individual risks must be calculated, can be done by the Department only in the exercise of its rate-making function.

To effect a change in a manual rate it is necessary for the Department to publish fifteen days notice before making such a change effective, according to the requirement of R.S. Art. 4907, Vernon's Ann.Civ. St. art. 4907. Appellee helpfully indicates in its motion that in making changes in a manual rate, the Department actually does this. And, of course, a newly established manual rate can operate prospectively only. Indeed, as herein indicated, all rates operate only from and after they have been prescribed; but the establishment of a manual rate prescribes the variations that are calculated thereon to be applied to individual risks.

Because the correction made by the Department on November 22, 1934, did not violate appellee's constitutional rights, but simply enforced the applicable previously prescribed rate, appellant was entitled to recover reparation for the excess collected by appellee over the applicable lawful rate then actually in force. It follows that judgment should be here rendered for appellant for the overcharges sued for, as they are fixed by proof; therefore, appellant's motion for rehearing is granted; the former judgment of this court set aside, judgment reversed and rendered, and appellee's motion for rehearing refused.

Appellant's motion for rehearing granted, former judgment set aside, cause reversed and rendered, and appellee's motion for rehearing refused.

### On Appellee's Motion for Rehearing.

This cause is before us at this time on appellee's motion for rehearing of our judgment granting appellant's motion for rehearing, reversing the judgment of the trial court and here rendering it for appellant.

The Legislature is competent to set up an agency to prescribe insurance rates and apply them to workmen's compensation insurance policies, and can, of course, vest such agency with ample powers to enable it to function properly. But the Legislature cannot deprive the courts of their judicial function to determine the legal rights of insurance companies and policy holders, consequent upon a correction being made in rate-application by such legislative agency, and vest such purely judicial function in such agency. Neither has the Legislature attempted to deprive the courts of such judicial function and confer it upon the Insurance Department, nor does the Department pretend to any authority to exercise such judicial function.

It is true that in the instant case the Department exercised the authority to order appellee to make reparation to appellant for a portion of the excess premiums which appellee had collected from appellant prior to the correction made in rate-application on November 22, 1934. But this order that appellee make such partial reparation was but incidental to its exercise of authority to make the correction of the error in rate-application, and to making such correction effective and complete within the limits of the Department's administrative function. As we have seen, the limits which the Department has set as fixing the scope within which to exercise its administrative function on insurance policies, is the period between their anniversary dates, one year. Its authority to prescribe the limits within which it deems it expedient to exercise its administrative function will be liberally construed. However, *the legal rights of insurance companies and of policy holders do themselves necessarily fix limits to the authority which the Department may exercise.* In the present instance the Department could in the exercise of its administrative function, require appellee to make reparation to appellant for the excess premium which it had collected covering the period between November 22, 1934 (when the correction was made), and the policies' preceding *anniversary* date, because to do so did not deprive appellee of any legal right. That is, appellee had no right not to make reparation to appellant for the entire period between the date such correction was made and the *effective* dates of the policies; because as we have seen, the rate applied by way of correction by the Department on November 22, 1934, was in force during all the time the policies were in effect. Such rate was the lawfully prescribed rate for the risk in question, as the Department then found. It therefore follows that in collecting premiums based on the higher rate, appellee collected, and appellant paid, more than the lawful rate. And appellant did not derive its right to recover reparation, nor did appellee derive its obligation to make reparation, from the order of the Department requiring appellee to make reparation from November 22, 1934, to the policies' anniversary date, May 2, 1934, but, to the contrary, the Department could exercise the authority to make such order only because, independ-

ently of such order, the appellant possessed the legal right to reparation and appellee was under the legal obligation to make reparation. If the Department should deem it expedient, in the exercise of its control over insurance matters, not to order any reparation made when it corrects an error in rate application, the one in whose favor the error had operated would still be under the legal obligation to make reparation, and the one against whom it had operated will still possess the legal right to recover reparation. And the Department can at any time it should deem it good policy to do so cease ordering reparations made, even during the period between anniversary dates of policies. But such change in policy on the part of the Department could not abolish the right to recover, and the obligation to make, reparation consequent upon correcting a rate-application, nor deprive the courts of jurisdiction over the action to recover such reparation.

It follows from what has been said that the refusal of the Department to order appellee to make reparation for the period prior to the anniversary date of the policies, preceding the date the correction was made, could not possibly relieve appellee of its legal obligation to make, nor deprive appellant of its legal right to exact, such reparation (for the period May 2, 1933, to May 2, 1934). Indeed, the refusal of the Department to order reparation made on, what it designates as, the "expired" portion of the policies, is obviously referable to its unwillingness to exceed the bounds fixed to the scope within which it will exercise its administrative function, namely, the period between the current anniversary dates. Had the Department, however, not merely refused to order reparation made for the period from May 2, 1933, to May 2, 1934, but had gone further and undertaken to exercise the judicial function and rule that appellant should have no right to recover reparation during such period, such order would have been absolutely null and void. Neither could the Department through the exercise of its unquestioned legislative function have deprived appellant of the right to the corrected rate (inclusive of the right to reparation during the period it was not applied), because it is as much the exercise of the legislative function of rate-making to repeal a rate which is in effect, as it is to make a new one. It would therefore have been as unconstitutional for the Department on November 22, 1934, to undertake to repeal a rate retroactively for the period between May 2, 1933, and May 2, 1934, as it would have been to order a new rate into effect retroactively for such period. The rate applied by way of correction on November 22, 1934, having been in full force during May 2, 1933, to May 2, 1934, appellant could not, as already stated, be denied the *right* to reparation for such period by the Department. But the refusal of the Department to order such reparation could only, have the effect, and no doubt was intended to have only the effect of, leaving appellant to its legal remedy in court to recover reparation from appellee for the excess premiums collected on the policies from May 2, 1933 to May 2, 1934.

It would be the pedantry of citation to refer to authorities in support of the elementary law hereinabove applied.

From authorities cited by appellee we infer that it considers that the courts are required to give to the orders of the insurance department the same conclusive and binding effect which Art. 6452 gives to the rates, etc., of the Railroad Commission in actions between railroads and shippers, unless and until found invalid or unreasonable in an action brought directly against the Railroad Commission for that purpose. However binding and conclusive the orders of the Department may or may not be in general, we are here concerned only with the effect in court of the Department's correction order of November 22, 1934. Of this order we said in our original opinion: "Now, while the finding of the Commissioner, to the effect that appellee was collecting a premium rate from appellant in excess of what appellant's true experience record indicated, *is conclusive and binding in the state of the record before us * * *"* Thus we there ruled that, at least for the time being in this action, the correction order of November 22, 1934, was conclusive and binding. We were then of the opinion and still believe (but it is now not necessary to rule on the point) that it might be legally permissible for appellee to take steps to attack said finding of November 22, 1934, if the cause were remanded for a new trial; and, as we had found the case had been tried on the wrong theory, upon reversing the judgment of the trial court, we ordered the cause remanded. Upon consideration of the motions for rehearing,

by both parties, upon our judgment remanding the cause, we found that under no possible theory, supported by the record could the trial court do other than render the judgment, in case of a new trial, which we rendered on said rehearing. We therefore considered that it was error for us to remand the cause on the theory that, peradventure, the appellee might thereupon form the desire to attack the Department's finding of November 22, 1934, which finding it had not merely acquiesced in, but had accepted by making partial restitution thereon. Article 1856 provides: "When the judgment or decree of the court below shall be reversed the court [of Civil Appeals] shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial." As the record disclosed that appellee had accepted the Department's finding of error in rate-application of November 22, 1934, and its correction thereof, and, as the damage to be assessed under such correction was certain, we were required by force of Art. 1856 to render the judgment which the trial court should have rendered, and not to remand for a new trial.

Appellee's motion for rehearing, which was filed after the granting of appellant's motion, is now refused.