TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00435-CV






Texas Workers' Compensation Commission; Richard Reynolds, in his Official Capacity as
Executive Director of the Texas Workers' Compensation Commission; State Office of
Administrative Hearings; and Chief Administrative Law Judge Sheila Bailey Taylor,

in her Official Capacity/East Side Surgical Center; Clinic for Special

Surgery; and Surgical and Diagnostic Center, L.P., Appellants


v.


East Side Surgical Center; Clinic for Special Surgery; and Surgical and Diagnostic

Center, L.P./Texas Workers' Compensation Commission; Richard Reynolds,

in his Official Capacity as Executive Director of the Texas Workers'

Compensation Commission; State Office of Administrative

Hearings; and Chief Administrative Law Judge Sheila

Bailey Taylor, in her Official Capacity, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. GN202229, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





O P I N I O N



 This case involves the failure of the Texas Workers' Compensation Commission (the
"Commission") to establish fee guidelines for health care services provided by ambulatory surgical
centers (1) under the Texas Workers' Compensation Act (the "Act"). See Tex. Lab. Code Ann.
§§ 401.001-506.002 (West 1996 & Supp. 2004). Ambulatory surgical centers, East Side Surgical
Center, the Clinic for Special Surgery, and intervenor Surgical and Diagnostic Center (collectively
"East Side"), sued the Commission in an attempt to invalidate certain default rules, 28 Tex. Admin.
Code §§ 133.304(i), 134.1(c) (2003), designed to apply where the Commission has failed to
promulgate fee guidelines. (2) After a bench trial, the district court declared rule 133.304(i) invalid and
enjoined the Commission from enforcing it. We will reverse the judgment invalidating rule
133.304(i) and dissolve the injunction.


PROCEDURAL AND FACTUAL BACKGROUND


 The parties proceeded to a bench trial on stipulated facts. For our purposes, the most
relevant facts are that East Side is an ambulatory surgical center, which has rendered health care
services to injured workers who were insured by the Act, that it submits each claim to an insurance
carrier, and that the carrier decides how much to pay on each claim based on the carrier's
determination of whether the claim "is fair and reasonable." It is this last point that forms the basis
of this suit. East Side contends that the Commission has unlawfully delegated its authority to the
carriers to set the fees paid to ambulatory surgical centers. But before we address the merits of East
Side's argument, we will frame the discussion with an overview of the applicable statutory and
regulatory process at issue.


The claims-reimbursement process

 Claims for reimbursement for health care services rendered to injured workers insured
by the Act are submitted to the insurance carrier, who pays the fee allowed under section 413.011
of the labor code. See Tex. Lab. Code Ann. §§ 408.027(a), (3) 413.015(a) (West Supp. 2004). Section
413.011 requires the Commission to establish fee guidelines that are "fair and reasonable and
designed to ensure the quality of medical care and to achieve effective medical cost control." Id.
§ 413.011(a), (d) (West Supp. 2004); Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.,
47 Tex. Sup. Ct. J. 607, 2004 Tex. LEXIS 477, at *20-21 (May 28, 2004). The Commission has yet
to establish a fee guideline for ambulatory surgical care. See 28 Tex. Admin. Code § 134.401(a)(4)
(2003) ("Ambulatory/outpatient surgical care is not covered by this guideline and shall be
reimbursed at a fair and reasonable rate until the issuance of a fee guideline addressing these specific
types of reimbursements.").

 In lieu of a fee guideline applicable to ambulatory surgical centers, the Commission
promulgated rules 133.1 and 133.304 of title 28 of the administrative code, 25 Tex. Reg. 2127, 2531
(adopted Mar. 10, 2000), and rule 134.1(c) of title 28 of the administrative code, 27 Tex. Reg. 4047-48 (adopted May 10, 2002). Rule 133.1 is entitled, "Definitions for Chapter 133--Medical
Benefits," and states that a fair and reasonable reimbursement must meet "the standards set out in
§ 413.001" of the labor code and is


 the lesser of a health care provider's usual and customary charge, or



 the maximum allowable reimbursement [("MAR")], when one has been
established in an applicable Commission fee guideline,



 (B) the determination of a payment amount for medical treatment(s) and/or
service(s) for which the Commission has established no maximum allowable
reimbursement amount, or


 (C) a negotiated contract amount.



28 Tex. Admin. Code § 133.1(a)(8) (2003).


 Rule 133.304(i) states:




 When the insurance carrier pays a health care provider for treatment(s) and/or
service(s) for which the Commission has not established a maximum allowable
reimbursement, the insurance carrier shall:

 
 develop and consistently apply a methodology to determine fair and
reasonable reimbursement amounts to ensure that similar procedures
provided in similar circumstances receive similar reimbursement.


 


Id. § 133.304(i) (2003).


 And rule 134.1(c) states, "Reimbursement for services not identified in an established
fee guideline shall be reimbursed at fair and reasonable rates" under section 413.011 of the labor
code until those fees "are established by the commission." Id. § 134.1(c) (2003). These medical-dispute-resolution rules bring us to the underlying dispute.

The dispute


 East Side sued the Commission for declaratory relief (4) regarding the validity of rules
133.1(a)(8), 133.304(i), and 134.1, and requested injunctive relief to enjoin their enforcement. It
asserted that the Commission did not have the express or implied authority to promulgate those
rules; that the promulgation of those rules constituted an unlawful delegation of the Commission's
rule-making authority to the insurance carriers, the Medical Review Dispute Officers ("MROs"), see
28 Tex. Admin. Code § 133.307 (2003), and SOAH; and that the Commission was acting outside
its statutory authority by allowing the carriers, the MROs, and SOAH to determine reimbursements
on an ad hoc adjudicatory basis instead of by rule. East Side also requested the district court to
declare that in the absence of a properly promulgated fee guideline, it was entitled to its usual and
customary reimbursement amount.

 After a one-day bench trial, the district court concluded that rule 133.304(i) was
invalid because it interfered with and impaired East Side's legal right and privilege to have fee
guidelines established by rule by the Commission and because it improperly delegated to the
insurance carriers the Commission's statutory duty and authority to establish fee guidelines. The
district court enjoined the Commission from applying rule 133.304(i) in setting fees for East Side's
services until the fee guidelines were established by rule by the Commission. The district court
subsequently filed conclusions of law, repeating those previously cited conclusions and adding that
the Commission could not by law establish fee guidelines through ad hoc adjudication.

 Both parties now appeal. East Side raises one issue: whether the district court erred
in failing to declare that the appropriate payment for a medical service, in the absence of a fee
guideline, is the provider's usual and customary charge. The Commission raises two issues: 
whether rule 133.304(i) was an unlawful delegation of the Commission's fee-setting authority, and
whether rule 133.304(i) interfered with or impaired East Side's legal right and privilege to have the
Commission set its fees. (5)





DISCUSSION


A. Standard of review


 Because the extent to which the Commission has unlawfully delegated its authority
is a matter of statutory construction, we review the district court's conclusions de novo. Public Util.
Comm'n v. City of Austin, 728 S.W.2d 907, 911-12 (Tex. App.--Austin 1987, writ ref'd n.r.e.). 
Because the district court's conclusions of law are reviewed de novo, we afford no deference to the
district court's decision. State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996). The district court's legal
conclusions will be upheld on appeal if the judgment can be sustained on any legal theory supported
by the evidence. Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex.
App.--Austin 1992, no writ). Those conclusions of law may not be reversed unless they are
erroneous as a matter of law. Id.


B. Delegation


 We begin with a discussion of the delegation issue. In an opinion issued after the
parties filed their appeals, the Texas Supreme Court decided that rule 133.304(i) was not an unlawful
delegation of the Commission's fee-setting authority to the insurance carriers. Patient Advocates,
2004 Tex. LEXIS 477, at *29-37. (6) Because the validity of rule 133.304(i) is at the heart of every
issue on appeal, a review of that case is in order.

 For our purposes, the relevant issue in Patient Advocates was whether the
Commission's rules for determining reimbursement amounts "in the absence of specified fee
guidelines improperly delegated the agency's . . . fee-setting authority to private entities." Id. at *1. 
The argument was that "permitting insurance carriers to develop a methodology to determine
reimbursement amounts where [the Commission] has not determined a [maximum allowable
reimbursement] gives carriers unfettered discretion and allows them to engage in secret rulemaking." 
Id. at *29.

 After a discussion similar to ours above reviewing the Act's reimbursement
procedures, the supreme court concluded that the carriers were not setting fees. Id. at *34. It noted
that, in the absence of a fee guideline, the provider initially set the fee, namely, the billed amount. 
Id. It also noted that the "carriers do not make the final determination of the fees for disputed
claims. If a carrier and a provider disagree on a reimbursement amount, [the Commission], not the
carrier, makes the decision on the proper payment, subject to review." Id. (emphasis added). Any
party dissatisfied with the outcome could "continue the review process through SOAH and then the
courts." Id. (citing Tex. Lab. Code Ann. § 413.031(d)). The court also explained that rule
133.304(i) did not give the carriers "hidden and unbridled discretion to arbitrarily set payments, but
[gives] them specific instructions on the procedures they are to follow." Id. at *35. Consequently,
rule 133.304(i) was not an unlawful delegation of the Commission's fee-setting authority. Id.

 We address an argument made by East Side that was not directly addressed by Patient
Advocates but is similar in nature, involving a claim that SOAH, in addition to the carriers, was
setting the fees. East Side contends that the methodology employed by SOAH constitutes fee setting. 
SOAH places appeals from the Commission's Medical Review Division into various groupings,
sorted by carrier and further sorted into common reimbursement methodologies and common
procedures. According to East Side, once the methodology is approved, "the ALJs will then apply
the carrier's reimbursement rates to all cases pending at SOAH involving the carrier." Thus,
"[g]iving stare decisis effect to the approval of a carrier's reimbursement determinations would, in
practical effect, amount to retrospective establishment of a fee guideline for all services billed to that
carrier."

 First, as indicated above, there has been no delegation of Commission authority. 
Second, the methodology is consistent with relevant statutes and rules. The legislature has mandated
that fees paid for services must be consistent. See Tex. Gov't Code Ann. § 413.011. The
Commission's rules reflect that requirement. See 28 Tex. Admin. Code § 133.304(i) (requiring the
insurance carrier to "develop and consistently apply a methodology to determine fair and reasonable
reimbursement amounts to ensure that similar procedures provided in similar circumstances receive
similar reimbursement"). SOAH's practice of consolidating cases by carrier and by procedure allows
it to determine whether the carrier has applied a consistent methodology. And, again, as the supreme
court stated in Patient Advocates, because the fee initially is set by the provider, there has been no
delegation of the Commission's fee-setting authority.

 Following the reasoning in Patient Advocates, we conclude that the Commission has
not unlawfully delegated its fee-setting authority to either the carriers or SOAH. We sustain the
Commission's first issue, conclude that rule 133.304(i) of title 28 of the administrative code is not
an unlawful delegation of the Commission's fee-setting authority, and reverse the district court's
judgment.

C. Statutory and legal right to have a fee guideline set


 The district court concluded that rule 133.304(i) was invalid for another reason: the
rule interfered with and impaired "the legal right and privilege of [East Side] to have fee guidelines
established by rule by the Commission[]." On appeal, the Commission makes two arguments. First,
it argues that the Commission's failure to establish a fee guideline is not a legal basis for invalidating
the rule. Second, it argues that East Side is not entitled to "Commission action solely by
rulemaking." The Commission believes that it has the discretion to set the fees paid to East Side on
an ad hoc basis and is not required to establish fee guidelines by rule. See Tex. Lab. Code Ann.
§§ 413.002, .011, .031 (giving the Commission adjudicatory power over the resolution of fee
disputes). East Side counters with the argument that the Commission's "choice to abdicate in favor
of the insurance carriers is unlawful and prejudicial" and that it has "a statutory right to have [its]
fees regulated by the Commission, based on the criteria stated in Section 413.011 of the labor code."

 The basis for East Side's argument is a quote from this Court: "Unless mandated by
statute, the choice by an agency to proceed by general rule or by ad hoc adjudication is one that lies
primarily in the informed discretion of the agency." State Bd. of Ins. v. Deffebach, 631 S.W.2d 794,
799 (Tex. App.--Austin 1982, writ ref'd n.r.e.) (citing Securities & Exch. Comm'n v. Chenery Corp.,
332 U.S. 194, 203 (1947)) (emphasis added). East Side believes that because section 413.011
requires the Commission to adopt the fee guidelines by rule and because that power cannot be
delegated, the statute mandates the Commission's enactment of fee guidelines, see Deffebach, 631
S.W.2d at 799.

 The supreme court, however, as we discussed above, held there was no delegation. 
It also held that the Commission complied with the statutory mandate in part, recognizing that "it
may be impossible for [the Commission] to create a comprehensive guideline covering all possible
medical procedures that an injured employee might require." Patient Advocates, 2004 Tex. LEXIS
477, at *31. Similarly, the court cited Railroad Commission v. Lone Star Gas Co., 844 S.W.2d 679,
689 (Tex. 1995), and Texas Boll Weevil Eradication Foundation v. Lewellen, 952 S.W.2d 454, 471
(Tex. 1997), for the proposition that "an administrative agency's failure to include every specific
detail and anticipate unforeseen circumstances when promulgating rules does not invalidate the
rules." Patient Advocates, 2004 Tex. LEXIS 477, at *31.

 We held similarly in Brinkley v. Texas Lottery Commission:



 The legislature intends that administrative agencies exercise effectively the powers
delegated to them . . . . Agencies would be reduced to impotence, however, if bound
to express their views as to "law," "policy," and procedural "requirements" through
contested-case decisions or formal rules exclusively; and they could not under such
a theory exercise powers explicitly delegated to them by the legislature . . . . 


 . . . . If every expression by the agency as to "law," "policy," and procedural
"requirements" requires the promulgation of a formal rule, the agency could no
longer exercise its "informed discretion" to choose adjudication as a means of
making law and policy, rather than rulemaking, a choice we have repeatedly said an
agency has when it possesses both adjudicatory and rulemaking powers.



986 S.W.2d 764, 769 (Tex. App.--Austin 1999, no pet.) (citations omitted). As articulated by the
supreme court, given the hundreds of medical fees the Commission was charged with establishing
and the complexity of some fees, it seems reasonable that the Commission would choose to proceed
on an ad hoc basis pending the setting of those fees. (7) Patient Advocates, 2004 Tex. LEXIS 477, at
*32-37.

 We also note that at trial and now on appeal, East Side cited no statutory right or privilege
to have the fee guidelines set by rule. Section 413.011 simply provides that the Commission must
establish fee guidelines that are "fair and reasonable and designed to ensure the quality of medical
care and to achieve effective medical cost control." Tex. Lab. Code Ann. § 413.011(a), (d). East
Side is only entitled to "fair and reasonable" reimbursement--not to have the fee guidelines
established by rule.

 Fee guidelines were never intended to be an entitlement. As we stated in Methodist Hospitals
v. Texas Workers' Compensation Commission, fee guidelines "merely assist carriers and, upon
review, the Commission in determining whether medical charges are 'fair and reasonable' or satisfy
the applicable standard." 874 S.W.2d 144, 149-50 (Tex. App.--Austin 1994, writ dism'd w.o.j.). 
Consequently, even if the Commission had promulgated fee guidelines, the provider would not have
a statutory right or privilege to be paid the amount set out in the guideline. East Side's contention
that the Commission was obligated by statute to set the fee guidelines is therefore incorrect. We
sustain the Commission's second issue, reverse, and render on this issue.


D. In the absence of fee guidelines, the provider's usual and customary charge applies

 

 East Side raises one issue on appeal premised on the invalidation of rule 133.304(i). It cites
All Saints Health System v. Texas Workers' Compensation Commission for the proposition that "the
appropriate remedy following the invalidation of an administrative rule under the APA is to return
to the last validly adopted legal standard existing at the time of the rule's promulgation." 125
S.W.3d 96, 102 (Tex. App.--Austin 2003, pet. denied). The last validly adopted legal standard,
according to East Side, is rule 42.105, which states that the maximum allowable charge for services
rendered is the lesser of the "provider's usual fees and charges," or the "fees and charges established
by use of a relative value scale." 28 Tex. Admin. Code § 42.105 (2003). Because the Commission
had not adopted a relative value scale, East Side felt it was due its usual and customary fee.

 This argument fails because the supreme court concluded that rule 133.304 is a valid rule. 
Patients Advocates, 2004 Tex. LEXIS 477, at *36-37. We overrule East Side's issue.


CONCLUSION


 We affirm in part and reverse and render in part the judgment of the district court. We
reverse the district court's judgment declaring rule 133.304(i), 28 Tex. Admin. Code § 133.304, an
unlawful delegation of Commission authority and finding that East Side had a legal right or privilege
to have the fee guidelines set; we render judgment that the rule is valid, and we dissolve the
injunction. Last, because rule 133.304(i) is valid, East Side is not entitled to its usual and customary
fee. We affirm the district court's judgment on that issue.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Rendered in Part.

Filed: July 29, 2004
1. An ambulatory surgical center is a healthcare facility "that operates primarily to provide
surgical services to patients who do not require overnight hospital care." Tex. Health & Safety Code
Ann. § 243.002 (West 2001).
2. In addition to the Texas Workers' Compensation Commission, East Side sued Richard
Reynolds, Executive Director of the Commission, the State Office of Administrative Hearings
("SOAH"), and Administrative Law Judge, Sheila Bailey Taylor. Texas Mutual, Continental
Casualty, and the State Office of Risk Management ("SORM") are insurance carriers authorized to
insure payment of workers' compensation. See Tex. Lab. Code Ann. § 401.011(27) (West Supp.
2004). They intervened in support of the Commission. We will refer to them collectively as the
"Commission."
3. Section 408.027(a) used to read: "An insurance carrier shall pay the fee charged for a
service rendered by a health care provider." See Act of May 22, 1993, 73d Leg., R.S., ch. 269, 1993
Tex. Gen. Laws 1179, amended by Act of June 19, 1999, 76th Leg., R.S., ch. 1426, 1999 Tex. Gen.
Laws 4868 (emphasis added). It now reads: "An insurance carrier shall pay the fee allowed under
section 413.011 for a service rendered by a health care provider." Tex. Lab. Code Ann. § 408.027(a)
(West Supp. 2004) (emphasis added). The purpose of this amendment was to clarify that health care
providers are not automatically entitled to their billed charges. House Comm. on Bus. & Indus., Bill
Analysis, Tex. H.B. 2510, 76th Leg., R.S. (1999).
4. East Side sought declaratory relief under the Administrative Procedures Act ("APA"), Tex.
Gov't Code Ann. §§ 2001.001-.902 (West 2000 & Supp. 2004), the Uniform Declaratory Judgments
Act ("UDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997), and section 402.021
of the labor code, Tex. Lab. Code Ann. § 402.021 (West 1996). Section 402.021 of the labor code
provides that judicial review of a Commission rule is governed by the APA. Tex. Lab. Code Ann.
§ 402.021(a).
5. Intervenor SORM also filed a separate appeal in this Court. At trial and now on appeal,
it argued that the district court lacked jurisdiction over East Side's request for declaratory relief
because East Side had failed to exhaust its administrative remedies prior to instituting suit. Because
the declaratory relief sought by East Side raised pure questions of law and dealt with the authority
of the Commission to delegate its fee-setting duties to the insurance carriers, the exhaustion doctrine
is inapplicable. See Grounds v. Tolar Ind. Sch. Dist., 707 S.W.2d 889, 892 (Tex. 1986) (questions
of law); Westheimer Indep. Sch. Dist. v. Brockette, 567 S.W.2d 780, 785 (Tex. 1978) (challenge to
statutory authority); Mission Ind. Sch. Dist. v. Diserens, 188 S.W.2d 568, 570 (Tex. 1945) (questions
of law); Chocolate Bayou Water Co. v. Tex. Natural Res. Conservation Comm'n, 124 S.W.3d 844,
852 (Tex. App.--Austin 2003, pet. filed) (citing Friends of Canyon Lake v. Guadalupe-Blanco River
Auth., 96 S.W.3d 519, 527 (Tex. App.--Austin 2002, pet. denied)). We also note that resolution of
this suit against the Commission will not require the determination of facts in the context of a
particular claim for reimbursement. See American Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 804
(Tex. 2001); Beacon Nat'l Ins. Co. v. Montemayor, 86 S.W.3d 260, 268 (Tex. App.--Austin 2002,
no pet.) (citing and distinguishing City of Waco v. Texas Natural Res. Conservation Comm'n, 83
S.W.3d 169, 176-78 (Tex. App.--Austin 2002, pet. denied)). Here, we are presented with the
question of the Commission's rulemaking authority--a question subject to declaratory relief. See
All Saints Health Sys. v. Texas Workers' Comp. Comm'n, 125 S.W.3d 96, 98-107 (Tex.
App.--Austin 2003, pet. denied); State Bd. of Ins. v. Deffenbach, 631 S.W.2d 794, 796-802 (Tex.
App.--Austin 1982, writ ref'd n.r.e.). We overrule SORM's jurisdictional issue.
6. In a letter brief filed after Texas Workers' Compensation Commission v. Patient Advocates
of Texas, 47 Tex. Sup. Ct. J. 607, 2004 Tex. LEXIS 477 (May 28, 2004), was decided, East Side
conceded the delegation issue. The decision is applicable to all of East Side's issues, however, so
we will briefly discuss the supreme court's holding.
7. On October 31, 2003, the Commission proposed fee guidelines for ambulatory surgical
centers. 28 Tex. Reg. 9405 (proposed Oct. 31, 2003).